1    WO

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8
     Michael   Salman   and   Suzanne   Salman,        No. CV 12-1219-PHX-JAT
9    husband and wife,
                                                       **ORDER**
10                              Plaintiffs,

11   v.

12   City of Phoenix, a municipal corporation of
     the State of Arizona,
13
                                Defendant.
14

15
            Pending before the Court are (1) Plaintiffs' Motion for Temporary Restraining
16
     Order (Doc. 4) and Motion for Preliminary Injunction (Doc. 5).   The Court held an
17
     evidentiary hearing on these Motions on June 14, 2012.   The Court now rules on the
18
     Motions.
19
            **I.     BACKGROUND**
20
            Plaintiffs bring this action pursuant to 42 U.S.C. § 1983, the Religious Land Use
21
     and Institutionalized Person Act of 2000, 42 U.S.C. § 2000cc (the "Land Use Act"), and
22
     the Arizona Constitution and Arizona Freedom of Religious Exercise Act (the "Arizona
23
     Freedom Act").   (Complaint, Doc. 1 at 1).
24
            Plaintiffs allege as follows:[1]
25

26    _____

27          [1]   Unless otherwise indicated, all of the facts set forth in this Background section
      of the Order are as alleged in Plaintiffs' Complaint.
28

Plaintiffs characterize themselves as born-again Christians, who want to hold private bible study groups and worship at their home located within Phoenix, Arizona (the "Property"). (*Id.* at 3). Plaintiffs allege that they have been prohibited from doing so based on facially unconstitutional Phoenix city ordinances and Phoenix building official's interpretations of the building and zoning codes.[2] (*Id.*).

Plaintiffs moved into the Property in December 2005. (*Id.* at 4). After moving in, Plaintiffs began private weekly bible studies (the "meetings") at the Property. (*Id.*). Plaintiffs allege that the only people who attended these meetings were Plaintiffs' family, friends, and invited guests. (*Id.* at 5). In 2007, Plaintiffs' neighbors began to complain to Defendant that Plaintiffs were holding bible studies in their home. (*Id.*). On February 23, 2007, the Assistant Development Services Director of the City of Phoenix sent Plaintiff Michael Salman a letter indicating that Plaintiff did not have a proper permit to build a church on the Property and informing Plaintiff that "Bible studies are not allowed to be conducted in your residence or the barn on your property as these structures do not comply with the construction code for this use." (*Id.* at 5 & Exhibit 2 at 39). In 2008, Plaintiffs' neighbors continued to complain that Plaintiffs were still having the meetings on their Property. (*Id.* at 5). Plaintiffs allege that Defendant then sent another letter to Plaintiffs "warning them that all religious meeting must cease or they will be in violation of construction codes." (*Id.*).[3]

Plaintiffs then met with Defendant and asked Defendant to explain why the meetings were not allowed. (*Id.* at 6). Plaintiffs allege that their efforts to compromise and understand Defendant's reasoning and demands were unsuccessful. (*Id.*). Plaintiffs

---

[2]   Plaintiffs have attached letters from the City of Phoenix addressed to Plaintiff Michael Salman as Exhibit 2 of their Complaint. (Complaint, Exhibit 2, Doc 1 at 39). Plaintiffs allege that these letters demonstrate Phoenix Building Officials' unconstitutional interpretation of the building and zoning codes.

[3]   Plaintiffs indicate that such letter is dated September 2008 and is attached as Exhibit "B" to the Complaint. However, there is no Exhibit "B" to the Complaint and no such letter is contained in any attachment to the Complaint. Rather, letters from the City of Phoenix dated February 23, 2007, May 8, 2007, and September 20, 2007 are attached as Exhibit 2 to the Complaint. (Doc. 1 at 39-41).

1    allege that they attempted to meet with neighbors to resolve their Complaints, but such

2    meetings were likewise unsuccessful. (*Id.*).

3    In June 2010, Plaintiff Michael Salman was charged with multiple violations of

4    Phoenix City Codes. (*Id.*).  Following a trial before the City of Phoenix Municipal Court

5    in August 2010, Plaintiff Michael Salman was convicted of violating sixty-seven building

6    codes and zoning ordinances. (*Id.* at 7).  Plaintiffs allege that fifty-five of the sixty-seven

7    convictions were due to religious gatherings on the Property. (*Id.*).  In September 2010,

8    Plaintiff Michael Salman was sentenced to sixty days in jail flat time, three years of

9    probation, $12,000 in fines and prohibited from having more than twelve people at his

10   residence at a time. (*Id.*).

11   On appeal, the Maricopa County Superior Court upheld the convictions.  Michael

12   Salman's appeal to the Arizona Court of Appeals was ultimately dismissed as untimely.

13   Plaintiff has been ordered to report to jail on June 17, 2012 to serve his sentence. (*Id.*).

14   Plaintiff challenges provisions contained in section 303 of the 2006 Phoenix

15   Building Code (the "Code"),[4] which Plaintiffs argue allow Plaintiffs to gather on the

16   Property for non-religious purposes, but prohibit Plaintiffs from gathering on the Property

17   for religious purposes. (*Id.* at 9).

18   Plaintiffs allege that Defendants continue to demand that all religious meetings be

19   prohibited on the Property until Plaintiffs convert their property into a "Place of

20   Worship" and meet commercial requirements. (*Id.* at 10).

21   Plaintiffs allege that the implementation of the Code against privately held

22   religious meetings is unconstitutional on its face, is an unconstitutionally vague, content-

23   based restriction on freedom of assembly, and is content-based restriction on free

24   exercise of religion. (*Id.* at 10-11).

25   Based on the foregoing, Plaintiffs allege three causes of action pursuant to 42

26

27          [4]   Although Plaintiffs indicate that the relevant section of the Phoenix Building
28   Code is attached to their Complaint as "Exhibit E," no such Exhibit is attached to the
     Complaint.

U.S.C. § 1983 and state law: (1) violation of the right to free exercise of religion under the U.S. Constitution and the Arizona Constitution (Count I); (2) violation of the right to due process under the U.S. Constitution (Count II); and (3) violation of the free exercise of religion under the Religious Land Use and Institutionalized Person Act of 2000 and Free Exercise of Religion under the Arizona Freedom of Religious Exercise Act (Count III).

For relief, Plaintiffs request (1) a Declaratory Judgment declaring that Defendant's implementation of the Code on privately held religious meetings violates the First and Fourteenth Amendments of the U.S. Constitution and the Arizona Free Exercise of Religion Act; (2) a permanent injunction enjoining Defendant from enforcing the Code on privately held religious gatherings; (3) a preliminary injunction enjoining the City of Phoenix from enforcing the Code on privately held religious gatherings; and (4) compensatory and punitive damages.

In their Motions for Preliminary Injunction (Doc. 5) and TRO (Doc. 4), Plaintiffs seek (1) an Order enjoining Defendants from implementing or enforcing Section 303 of the 2006 Phoenix Building Code on private religious gatherings and bible studies (Doc. 5) and (2) a temporary restraining order restraining the execution of the Sentence of Michael Salman ordered by the Municipal Court on May 17, 2012.  (Doc. 4 at 5-6).[5]

## II.    PLAINTIFFS' PRIOR CASE AGAINST DEFENDANT

On April 4, 2011, Plaintiffs filed a Complaint in this Court.  That case (No. CV 11-646-PHX-FJM) was assigned to Judge Martone.   In the Complaint in that case, Plaintiffs alleged eight counts pursuant to 28 U.S.C. § 1983 and state law: (1)  that the City of Phoenix's Code and Ordinances and actions violate Plaintiffs' rights to Free Exercise of Religion as guaranteed by the First Amendment of the U.S. Constitution and the Arizona Religious Freedom Act (Count 1); (2) that the City of Phoenix's Code and Ordinances and actions violate their right to equal protection under the Arizona and U.S.

---

[5]   This latter relief is not requested in Plaintiffs' Complaint.

1   Constitutions (Count 2); (3) that the City of Phoenix's Code and Ordinances and actions
2   violate their right to free exercise of religion under the Religion Land Use and
3   Institutionalized Persons Act of 2000, 42 U.S.C. 2000CC (Count 3); (4) that the City of
4   Phoenix's Code, Ordinances, and actions violate their right to free exercise of religion
5   under the Religious Freedom of Restoration Act (Count 4); (5) that that the City of
6   Phoenix's Code, Ordinances, and actions violate their rights to free speech and assembly
7   under the United States and Arizona Constitutions (Count 5); (6) that the City  of
8   Phoenix's "arbitrary determination that regularly scheduled meetings with a diverse
9   group of people is a violation of the Code and Ordinances" was made in  the absence of
10  objective standards and criteria in violation of Plaintiffs' due process rights under the
11  United States and Arizona Constitutions (Count 6); (7) that individual Defendants in that
12  action entered into a civil conspiracy to violate Plaintiffs' Constitutional rights (Count 7);
13  and (8) that the City of Phoenix failed to adequately supervise and train individual
14  Defendants who then violated Plaintiffs' constitutional rights (Count 8).   (*See* CV 11-
15  646-PHX-FJM, Doc. 1 at 50-68).

16          As relief in that action, Plaintiffs' sought: (1) a Declaratory Judgment declaring
17  Defendant City of Phoenix's Ordinances and actions unconstitutional and real and invalid
18  restrictions upon Plaintiffs' rights; (2) a Declaratory Judgment declaring Defendant City
19  of Phoenix's Ordinances and actions illegal and in violation of Plaintiffs' constitutional,
20  statutory and civil rights; (3) a Declaratory Judgment declaring Plaintiffs' and
21  Defendants' rights, duties, and obligations pursuant to the Ordinances, (4) a finding that
22  Defendants' conduct was motivated by evil motive or intent and involved reckless,
23  callous, or deliberate indifference to Plaintiffs' protected rights, (5) compensatory
24  damages to compensate Plaintiffs for violations of their constitutional, statutory and civil
25  rights, (6) a declaration of the rights and legal relations of the parties, (7) reasonable costs
26  and expenses, (8) reimbursement from the City of Phoenix for all fees and costs related to
27  the conversion of the Property into a commercial entity; and (9) punitive damages. (*Id.* at
28  69-70).

1    Plaintiffs also filed a Motion for Temporary Restraining Order in that case,

2    wherein Plaintiffs sought a Temporary Restraining Order ("TRO") enjoining Defendants

3    from implementing and enforcing the Codes and Ordinances against Plaintiffs to prohibit

4    private worship, bible studies, and placement of reader board with religious messages at

5    their residence and from prosecuting, sentencing, arresting, or incarcerating Plaintiffs.

6    (*See* CV 11-646-PHX-FJM, Doc. 2).  In that Motion, Plaintiffs specifically referred to

7    Michael Salman's conviction and sentence to serve sixty days in jail flat time, three years

8    of probation, $12,000 in fines, and the prohibition that Plaintiff Michael Salman not

9    allow more than twelve people at his residence at a time.  (*Id.*).  At the time of that

10   Motion, Plaintiffs' appeal of that sentence was pending before the Arizona Court of

11   Appeals.  (*Id.*).

12   After Judge Martone denied their Motion for Temporary Restraining Order (s*ee*

13   CV 11-646-PHX-FJM at Doc. 5), Plaintiffs filed an amended Complaint (CV 11-646-

14   PHX-FJM, Doc. 6) and an Amended Motion for Temporary Restraining Order (CV 11-

15   646-PHX-FJM, Doc. 7), asserting the same essential theories and requests for relief

16   asserted in their original Complaint and Motion for Temporary Restraining Order.  Judge

17   Martone denied Plaintiffs' Amended Motion for Temporary Restraining Order.  (CV 11-

18   646-PHX-FJM, Doc 10).

19   Thereafter, Judge Martone granted Defendants' Motion to Dismiss the civil

20   conspiracy claim alleged in the Amended Complaint and dismissed the civil conspiracy

21   claim with prejudice.  (CV 11-646-PHX-FJM, Doc. 21).  Defendants then moved to

22   dismiss the remainder of Plaintiffs' Amended Complaint under *Younger v. Harris*, 401

23   U.S. 37 (1971) and *Heck v. Humphrey*, 512 U.S. 477 (1994) and Judge Martone granted

24   that Motion to Dismiss on *Younger* and *Heck* grounds in a detailed and reasoned opinion.

25   *See Salman v. City of Phoenix*, No. CV 11-00646-PHX-FJM, 2011 WL 5024263 (D.

26   Ariz. Oct. 21, 2011).

27   **III.    LEGAL STANDARD**

28   To be entitled to temporary restraining order, Plaintiffs must show:

- 6 -

1    [1] they are likely to succeed on the merits,

2    [2] they are likely to suffer irreparable harm in the absence of preliminary relief,

3    [3] the balance of equities tips in their favor, and

4    [4] an injunction is in the public interest.

5    *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24-25 (2008).  Even if Plaintiffs have

6    not demonstrated that they are likely to succeed on the merits, if Plaintiffs establish

7    factors [3] and [4], a preliminary injunction is also appropriate when Plaintiffs have

8    demonstrated "serious questions going to the merits" and that the "hardship balance tips

9    sharply toward plaintiff[s]."  *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-

10   35 (2011).

11   **IV.    FINDINGS OF FACT AND CONCLUSIONS OF LAW**

12   **A.    Likelihood of Success on the Merits**

13   The Court cannot find that Plaintiffs are likely to succeed on the merits of their

14   section 1983 claims because Judge Martone's Order in Plaintiffs' prior case is res

15   judicata to the Court re-deciding the exact same issue on the exact same facts that were

16   before Judge Martone.  Plaintiffs argue that their claims are not based on the claims

17   asserted in the prior case before Judge Martone, but rather, arise from events that

18   occurred after that case was dismissed.  This argument, however, is belied by the

19   allegations in Plaintiffs' Complaint and the declaratory and injunctive relief sought in

20   their Complaint and Motions for injunctive relief.

21   Plaintiffs further rely on Judge Martone's dismissal of their claims without

22   prejudice, and that no decision on the merits was issued with regard to the causes of

23   action alleged in their prior Complaint, to support their assertion that res judicata does not

24   apply to this case.  While it is true that Judge Martone did not rule on the merits of

25   Plaintiffs' claims and that Plaintiffs' claims were dismissed without prejudice, Plaintiffs

26   have failed to allege any fact or otherwise demonstrate that anything has changed with

27   regard to Judge Martone's ruling that *Heck* serves as a bar to the section 1983 claims

28   alleged in Plaintiffs' Complaint.

1   Some of Plaintiffs' confusion appears to arise from the use of the generic term,

2   "res judicata," which often encompasses both claim preclusion (traditional res judicata)

3   and issue preclusion (also referred to as collateral estoppel).  Collateral estoppel or issue

4   preclusion in the concept that applies to Plaintiffs section 1983 claims and the Court will

5   use collateral estoppel throughout the remainder of this Order to avoid further confusion.

6   "To foreclose relitigation of an issue under collateral estoppel:  (1) the issue at

7   stake must be identical to the one alleged in the prior litigation; (2) the issue must have

8   been actually litigated in the prior litigation; and (3) the determination of the issue in the

9   prior litigation must have been a critical and necessary part of the judgment in the earlier

10  action."  *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1320 (9th Cir. 1992) (internal

11  citation omitted).

12  "For preclusion purposes, it does not matter that the dismissal was 'without

13  prejudice' and not on the merits of the underlying claims [where] the issue that led to

14  dismissal was adjudicated on *its* merits and was conclusively determined."  *Offshore*

15  *Sportswear, Inc. v. Vuarnet Intern., B.V.*, 114 F.3d 848, 851 (9th Cir. 1997); *see Link v.*

16  *Pile Drivers Union Local 34*, No. 10-16899, 2012 WL 76888, at *1 (9th Cir. 2012)

17  (where Plaintiff had previously litigated the issue of whether he had failed to exhaust his

18  intra-union remedies, Court found that he was barred on collateral estoppel grounds from

19  relitigating that issue, even though the merits of his underlying claims were left

20  undecided); *see also* 18 C. Wright, A. Miller & E. Cooper, et al., *Federal Practice &*

21  *Procedure* § 4402 (2nd ed., database updated April 2012) ("Relitigation of a suit for want

22  of federal subject-matter jurisdiction, for example, should not bar an action on the same

23  claim in a court that does have subject matter jurisdiction, but ordinarily should preclude

24  relitigation of the same issue of subject-matter jurisdiction in a second federal suit on the

25  same claim.").[6]

26  _____

27  [6]   Indeed, this case implicates the policies behind the doctrine of collateral
    estoppel.   There could be no faith in a judicial system that would allow a Plaintiff to
28  continue to relitigate an issue to inconsistent results in an attempt to receive a more
    favorable result.  Further, allowing the same issues to be continuously relitigated would

1          **1.      Whether Collateral Estoppel Applies to Plaintiffs' Request for
2                     this Court to Issue an Injunction Restraining the Execution of
                      the Sentence of Michael Salman**

3          In his October 21, 2011 Order, Judge Martone found that Plaintiffs' section 1983

4    claims had not yet accrued under *Heck v. Humphrey*, 512 U.S. 477 (1994) [7] because those

5    claims arose out of the same facts that led to the conviction of Michael Salman and

6    Plaintiffs had not shown that the conviction had "been reversed, expunged, declared

7    invalid, or questioned by issuance of a writ of habeas corpus."  *See Salman*, 2011 WL

8    5024263 at *4.  The only factual difference in the case currently before the Court and the

9    case that was before Judge Martone is that Plaintiffs' appeal to the Arizona Court of

10   Appeals has now concluded.  This factual difference does nothing to effect the *Heck* bar

11   to Plaintiffs' claims.

12         The arguments made in Plaintiffs' Supplemental Brief (Doc. 15) convince the

13   Court that Plaintiffs seek reconsideration or some form of appellate review of Judge

14   Martone's prior Order with regard to *Heck*.  Plaintiffs attempt to argue that circuit courts,

15   including the Ninth Circuit Court of Appeals, have carved out an exception to *Heck* and

16   thus, the *Heck* bar should not apply to this case.  This argument ignores the fact that this

17   identical issue was before Judge Martone in Plaintiffs' prior case, was actually litigated,

18   and was critical to Judge Martone's decision to dismiss Plaintiffs' § 1983 claims as

19   untimely under *Heck*.

20         This Court has no authority to collaterally review the decisions of another Judge

21   within the Court.  *See Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398 (1981)

22   ("an erroneous conclusion reached by the court in the first suit does not deprive the

23   defendants in the second action of their right to rely upon the plea of *res judicata*.  A

24   ———————————————————————————————

25   seriously overburden the Courts and cause significant prejudice to Defendants, who
     would be required to defend themselves against the same allegations without ever being
26   able to rely on the finality of a Court's prior decision on an issue.

27       [7]    The *Heck* Court applied "the hoary principle that civil tort actions are not
     appropriate vehicles for challenging the validity of outstanding criminal judgments . . . to
28   § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of
     his conviction or confinement"). 512 U.S. at 483–87.

1  judgment merely voidable because based upon an erroneous view of the law is not open

2  to collateral attack, but can be corrected only by a direct review and not by bringing

3  another action upon the same cause of action.") (internal quotation and citation omitted).

4  There is no question that when a District Court dismisses a case based on *Heck*, Plaintiffs

5  are able to seek appellate review of the District Court's decision. *See, e.g.*, *Beets v.*

6  *County of Los Angeles*, 669 F.3d 1038 (9th Cir. 2012).  This Court cannot sit as an

7  appellate Court merely because Plaintiffs have not properly exercised their right to appeal

8  Judge Martone's prior Order finding that *Heck* applied to their section 1983 claims.

9       Because nothing has changed in Plaintiffs' case that would affect the *Heck* bar,

10  Plaintiffs are barred from relitigating this issue before this Court by collateral estoppel.[8]

11       While Plaintiffs argue that their new Complaint raises issues that did not occur

12  until after Judge Martone's prior Order, Plaintiffs seek to have the Court enjoin the

13  conviction of Michael Salman based on essentially the same claims made in both

14  complaints and were seeking the same relief before Judge Martone.  Judge Martone

15  specifically addressed that relief and the underlying claims that would entitle Plaintiffs to

16  such relief in his prior Order.  Accordingly, it is unclear to the Court how this is a new

17  claim that arose after the case before Judge Martone ended.  Because Plaintiffs have

18  failed to present any facts to distinguish this issue from the issue that Judge Martone

19  already delivered a reasoned opinion on, this Court cannot enjoin the execution of the

20  Municipal Court's sentencing Order, as Judge Martone has already issued an opinion

21  finding that deciding the merits of the underlying claims that might entitle Plaintiffs to

22  such relief would contravene *Heck*.

23       **2.    Plaintiffs' Request for an Order Enjoining Defendants from**
         **Implementing or Enforcing Section 303 of the 2006 Phoenix**
24       **Building Code on Private Religious Gatherings and Bible**
         **Studies**
25

26  [8]  Further, Plaintiffs argument that the exception to the *Heck* bar carved out in *Nonnette*
    *v. Small*, 316 F.3d 872 (9th Cir. 2002) applies to Plaintiffs' § 1983 claims in this case
27  ignores that the exception carved out by *Nonnette* is a limited exception, applying only to
    "'former prisoners challenging loss of good-time credits, revocation of parole or similar
28  matters,' not challenges to an underlying conviction." *Guerrero v. Gates,* 442 F.3d 697,
    705 (9th Cir. 2006) (quoting *Nonette*, 316 F.3d at 878).

1    Plaintiffs' request for an Order enjoining Defendants from implementing or

2    enforcing Section 303 of the 2006 Building Code are based on their allegations that

3    Section 303 is unconstitutional as alleged in Counts I–III of their Complaint.   Defendants

4    argue that Plaintiff Michael Salman was given an opportunity to make these arguments in

5    the state criminal proceedings and, thus, these claims are precluded either by res judicata,

6    *Rooker-Feldman*, or both.

7              *Rooker-Feldman* is a powerful doctrine that prevents federal
              courts from second-guessing state court decisions by barring
8              the lower federal courts from hearing de facto appeals from
              state-court judgments: If claims raised in the federal court
9              action are "inextricably intertwined" with the state court's
              decision such that the adjudication of the federal claims
10             would undercut the state ruling or require the district court to
              interpret the application of state laws or procedural rules, then
11             the federal complaint must be dismissed for lack of subject
              matter jurisdiction.
12
*Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003), *cert. den.*, 540 U.S. 1213
13
(2004).   Application of the *Rooker-Feldman* doctrine deprives the Court of subject matter
14
jurisdiction.
15
       The Ninth Circuit Court of Appeals has recognized that while "Federal district
16
courts do have jurisdiction over a 'general constitutional challenge,' i.e. one that does not
17
require review of a final state court decision in a particular case, [the] distinction between
18
a permissible general constitutional challenge and an impermissible appeal of a state
19
court determination may be subtle, and difficult to make." *Doe & Assocs. Law Offices v.*
20
*Napolitano*, 252 F.3d 1026, 1029 (9th Cir. 2001) (internal citation omitted).   To draw the
21
distinction, the Court must determine "whether the district court is 'in essence being
22
called upon to review the state court decision.'"   *Id.* (quoting *Feldman*, 460 U.S. at 482 n.
23
16).   "If the federal constitutional claims presented to the district court are 'inextricably
24
intertwined' with the state court's judgment, then [Plaintiff] is essentially asking the
25
district court to review the state court's decision, which the district court may not do."
26
*Id.*
27
       The Maricopa County Superior Court considered Michael Salman's arguments
28

1   that the building, zoning, fire, and safety codes violate his constitutional rights.

2   Specifically, the Superior Court held:

3           Defendant [Michael Salman] has made no showing that his
            refusal to comply with the applicable building, fire, safety,
4           and zoning codes was motivated by any religious belief.
            Further, Defendant has failed to establish that the applicable
5           building fire, safety, and zoning codes substantially burdens
            the exercise of religious beliefs.  Those building, fire, safety,
6           and zoning codes apply to every other religious organization
            in the City of Phoenix, and those other religious organizations
7           appear to be able to both comply with those codes and
            conduct their religious activities.   Finally, the state has a
8           compelling interest in securing the safety of its citizens, and
            has imposed the least restrictive means of furthering that
9           compelling interest.   Defendant thus has failed to establish
            prejudice.

10
    (Defendant's Response to Supplemental Brief, Doc. 22-1 at Exhibit 1).

11
            In this case, Plaintiffs claims necessarily depend on this Court reaching opposite

12  findings on the issues discussed in the Maricopa County Superior Court's Order.[9]

13  Accordingly, Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine and, thus, this

14  Court is unable to conclude that Plaintiffs are likely to succeed on the merits such that

15  they would be entitled to a preliminary injunction on those claims.

16          Because the Court has found that Plaintiffs are unlikely to succeed on their claims,

17  the Court need not address the additional requirements for a preliminary injunction.  *See*

18  *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 906 n.15 (9th Cir. 2007).

19          Further, because this Court has found that Plaintiffs' section 1983 claims are

20  premature pursuant to Judge Martone's Order and *Heck* and Plaintiffs' remaining claims

21  are barred by the *Rooker-Feldman* doctrine, this Court necessarily lacks subject-matter

22  jurisdiction over those claims at this time.[10]  Because this Court cannot proceed where it

23

24          [9]  That Plaintiffs seek to have this Court decide issues addressed by the Maricopa
    County Superior Court is highlighted by the allegations in each Count of their Complaint
25  that the zoning laws and building codes are not neutral or generally applicable and there
    is no compelling governmental interest for such laws.  (*See* Doc. 1).
26

27          [10]  During the preliminary injunction hearing, the Court attempted to determine
    whether any of Plaintiffs' remaining claims would survive the *Rooker-Feldman* bar.
    Based on Plaintiffs' responses during that hearing, all of Plaintiffs' challenges to the
28  constitutionality of the Phoenix Codes (either facially or as applied) and the sentencing

does not have jurisdiction, this case will be dismissed.   *See* Fed.R.Civ.P.  12(h)(3); *Scholastic Entm't, Inc. v. Fox Entm't Group, Inc.,* 336 F.3d 982, 985 (9th Cir. 2003).

## V.    CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Plaintiffs' Motion for Temporary Restraining Order (Doc. 4) is denied.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Preliminary Injunction (Doc. 5) is denied.

**IT IS FINALLY ORDERED** that this case is dismissed without prejudice.  The Clerk of the Court shall enter judgment accordingly.

Dated this 15th day of June, 2012.

James A. Teilborg
United States District Judge

---

order would require the Court to review the state court's decision and are inextricably intertwined with that decision. Accordingly, all of Plaintiffs' challenges are barred by the *Rooker-Feldman* doctrine.

Further, while Plaintiffs continue to assert that they have exhausted all other remedies, it appears to the Court that Plaintiffs' constitutional challenges to Plaintiff Michael Salman's conviction and the relevant code provisions could still be raised by either seeking post-conviction relief in the Arizona Courts, if appropriate, and/or by filing a Writ of Habeas Corpus. *See* Ariz.R.Crim.P. 32; 28 U.S.C.A. § 2254.