WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Salman, et al., | No. CV-12-01219-PHX-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| Phoenix, City of, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion to Dismiss Salmans' Amended Complaint. (Doc. 62). The Court now rules on the motion.

**I.    Background**

    **A.    Factual Background**

For context, the Court briefly summarizes the facts as they are stated in the Amended Complaint. In 2006, Plaintiffs moved into their current address and began holding weekly bible study meetings in their home. Plaintiff Michael Salman has been an ordained minister since 1996, and as such, he believes that he is called to be hospitable and to make himself available to his friends and family for studies and religious teaching.

In 2007, Plaintiffs' neighbors began to complain to Defendant City of Phoenix about Plaintiffs' bible studies. As a result, the City sent Plaintiffs several letters informing them that they are not permitted to use their house as a church, citing the

City's building code. Plaintiffs met with representative of the City to discuss the problem, but were unable to come to an agreement about Plaintiffs' religious use of their property.

In 2009, Plaintiffs built a 2000 square foot game room in their back yard and began holding their bible studies there. Upon the completion of this addition, attendance at Plaintiffs' bible study rose from about fifteen to about thirty-five. Eventually the City prosecuted Mr. Salmans for violating the building code, and Mr. Salmans was convicted after a trial at the Phoenix Municipal Court. The Maricopa County Superior Court, sitting as an appellate court, upheld the conviction.

### B. Procedural History

This is not the first time Plaintiff has sought relief from the City's actions. On April 4, 2011, Plaintiffs filed a Complaint in this Court, which was assigned to Judge Martone. (No. CV 11-646-PHX-FJM). Among other requests for relief, in that case Plaintiff sought a Temporary Restraining Order ("TRO") enjoining Defendants from implementing and enforcing the Codes and Ordinances against Plaintiffs to prohibit private worship, bible studies, and placement of a reader board with religious messages at their residence and from prosecuting, sentencing, arresting, or incarcerating Plaintiffs. (*See* CV 11-646-PHX-FJM, Doc. 2). In that Motion, Plaintiffs specifically referred to Michael Salman's conviction and sentence to serve sixty days in jail, three years of probation, $12,000 in fines, and the prohibition against Plaintiff Michael Salman hosting more than twelve people at his residence at a time. (*Id.*). At the time of that Motion, Plaintiffs' appeal of that sentence was pending before the Arizona Court of Appeals. (*Id.*).

After Judge Martone denied their Motion for Temporary Restraining Order (s*ee* CV 11-646-PHX-FJM at Doc. 5), Plaintiffs filed an amended Complaint (CV 11-646-PHX-FJM, Doc. 6) and an Amended Motion for Temporary Restraining Order (CV 11-646-PHX-FJM, Doc. 7), asserting the same essential theories and requests for relief asserted in their original Complaint and Motion for Temporary Restraining Order. Judge Martone denied Plaintiffs' Amended Motion for Temporary Restraining Order. (CV 11-

646-PHX-FJM, Doc 10).

Defendants moved to dismiss the remainder of Plaintiffs' Amended Complaint under *Younger v. Harris*, 401 U.S. 37 (1971) and *Heck v. Humphrey*, 512 U.S. 477 (1994) and Judge Martone granted that Motion to Dismiss on *Younger* and *Heck* grounds in a detailed and reasoned opinion. *See Salman v. City of Phoenix*, No. CV 11-00646-PHX-FJM, 2011 WL 5024263 (D. Ariz. Oct. 21, 2011).

Less than a year after Judge Martone dismissed the case, Plaintiffs filed the current action. (Doc. 1). Plaintiffs' original Complaint requested (1) a Declaratory Judgment declaring that Defendants' implementation of the Code on privately held religious meetings violates the First and Fourteenth Amendments of the U.S. Constitution and the Arizona Free Exercise of Religion Act; (2) a permanent injunction enjoining Defendant from enforcing the Code on privately held religious gatherings; (3) a preliminary injunction enjoining the City of Phoenix from enforcing the Code on privately held religious gatherings; and (4) compensatory and punitive damages.

Plaintiffs also moved for the issuance of a preliminary injunction (Doc. 5) and TRO (Doc 4) enjoining Defendants from implementing the code on private religious gatherings and bible studies and restraining the execution of Mr. Salman's sentence. The Court denied these requests and dismissed the case for several reasons. First, the Court found that Plaintiffs' § 1983 claims were barred by *Heck* and the doctrine of collateral estoppel. (Doc. 36 at 8–9). Second, the Court concluded that under the *Rooker-Feldman* doctrine, it lacked subject matter jurisdiction to consider Plaintiffs' remaining claims because doing so would "necessarily depend on this Court reaching opposite findings on the issues discussed in the Maricopa Superior Court's Order." (Doc. 36 at 12).

Plaintiffs appealed the Court's dismissal of the case to the United States Court of Appeals for the Ninth Circuit, which reversed and remanded. (Doc. 49-1). Importantly, as the Ninth Circuit's mandate pointed out, Plaintiffs did not appeal and the Ninth Circuit did not review the Court's dismissal of Plaintiffs' § 1983 damages claims on *Heck* and collateral estoppel grounds. (*Id.* at 2). Rather, the only issue the Ninth Circuit reviewed

1  was whether "under the *Rooker–Feldman* doctrine . . . [the Court] lacked subject matter
2  jurisdiction over [Plaintiffs'] request for an order enjoining the City from implementing
3  or enforcing Section 303 of the 2006 Phoenix Building Code on private religious
4  gatherings and bible studies and over their other remaining claims." (Doc. 49-1 at 2). On
5  that issue, the Ninth Circuit held that the Court does, in fact, have subject matter
6  jurisdiction over Plaintiffs' non-§ 1983 claims because *Rooker-Feldman* does not strip
7  jurisdiction when "a federal plaintiff presents some independent claim, albeit one that
8  denies a legal conclusion that a state court has reached in a case to which he was a party."
9  (*Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005)).

Plaintiffs then amended their Complaint in a way that, in their own words, "does not differ much from the Original Complaint other than it focuses and clarifies the core issue, which is the Defendants['] application of a 'Code' intended for public use against private religious gatherings, specifically the Plaintiffs." (Doc. 64 at 2). The Amended Complaint requests relief similar to that requested in the Original Complaint. Specifically, the Amended Complaint requests: (1) a declaratory judgment declaring that enforcement of the Code against those who hold private religious meetings on their property violates the First and Fourteenth Amendments to the United States Constitution and the Arizona Free Exercise of Religion Act ("FERA"); (2) a permanent injunction enjoining Defendants from enforcing the "Code" against land owners holding private religious meetings and from "treating private religious gathering and assemblies on less than equal terms as non-religious gatherings and assemblies"; and (4) compensatory and punitive damages. (Doc. 56 at 21–22).

Defendants moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). The motion is fully briefed, and the Court held oral argument on June 24, 2015.

**II.    Legal Standard**

The Court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory and (2) insufficient facts alleged

- 4 -

under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level. *Id*. Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*. (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1202, pp. 94, 95 (3d ed. 2004)).

Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). A complaint that offers nothing more than naked assertions will not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678. Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id*. "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (citing

*Twombly*, 550 U.S. at 557).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in the complaint in the light most favorable to the drafter of the complaint and the Court must accept all well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

**III. Discussion**

**A.    § 1983 Damages Claims**

Counts I and II of the Amended Complaint allege violations of the First and Fourteenth Amendments to the United States Constitution. (Doc. 56 at ¶¶ 103, 114). Although the Amended Complaint does not mention it, these claims are brought under 42 U.S.C. § 1983.

As noted above, the Ninth Circuit's mandate did not affect the Court's conclusion that Plaintiffs' § 1983 damages claims are barred by *Heck* and collateral estoppel. (Doc. 49-1 at 2). The Court therefore reaffirms its conclusion that Plaintiffs' § 1983 damages claims are barred and dismisses those claims.

**B.    Prospective Relief under § 1983**

In addition to their claims for damages, Plaintiffs also seek prospective relief under § 1983[1] in the form of various injunctions and declaratory judgments. Specifically, Plaintiff request that the Court declare unconstitutional Defendant's enforcement of the Code against holders of private religious meetings and an injunction forbidding such enforcement. (Doc. 56 at 21–22).

Defendants argue that "as a matter of law, [the] Salmans are not entitled to prospective relief—because this claim rests on their state convictions." (Doc. 62 at 8). Put another way, Defendants argue that Plaintiffs' prospective relief claims require an

---

[1] The Amended Complaint does not reference § 1983, but the Court construes it as seeking damages under that section, the only conceivable vehicle for the remedies Plaintiffs seek.

- 6 -

adjudication of the same issues as the Court would have to adjudicate if it were to directly consider the validity of Mr. Salman's conviction and sentence. This, Defendants argue, is barred by *Heck*.[2] *Heck*, 512 U.S. at 487. Plaintiffs, on the other hand, argue that *Heck* only bars Plaintiffs from directly challenging Mr. Salman's conviction or sentence, and that other forms of relief remain available. (Doc. 64 at 4).

The Supreme Court has held that the writ of habeas corpus, as the main vehicle for challenging state convictions, creates an "implicit exception from § 1983's otherwise broad scope." *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005). As such, the court has instructed that claims that, if successful, would "necessarily imply the invalidity of [the] conviction or sentence" are not cognizable under § 1983 and must instead be brought under the exclusive remedy of a habeas petition. *Heck*, 512 U.S. at 487. Under this doctrine, claims for damages caused by an allegedly wrongful conviction, are barred. *Id.* In addition, "[o]rdinarily a prayer for . . . prospective relief will not 'necessarily imply' the invalidity of a previous [conviction] and so may properly be brought under § 1983." *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). Nevertheless, the key inquiry is not whether the relief sought is prospective or retrospective, but whether "success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Dotson*, 544 U.S. at 82 (emphasis in original).

Even a § 1983 claim that does not specifically request that a conviction be overturned may be barred. *Heck*, 512 U.S. at 486 n.6. In *Heck*, the Supreme Court explained that a person who has been convicted of resisting arrest—which requires proof that the arrest was lawful—may not bring a § 1983 suit for an unreasonable seizure under the Fourth Amendment because such a claim would require the plaintiff to "negate an

---

[2] Defendants also contend that Judge Martone's decision to dismiss Plaintiffs' claims for prospective relief precludes those claims in this Court under the doctrine of collateral estoppel. (Doc. 62 at 8). Judge Martone's dismissal of those claims, however, was based on *Younger*, which requires federal courts to abstain when a state proceeding on the same matter is ongoing. *Hirsh v. Justices of Supreme Court of State of Cal.*, 67 F.3d 708, 712 (9th Cir. 1995). Because Mr. Salman's state court proceedings are no longer ongoing, Judge Martone's dismissal of Plaintiffs' request for prospective relief is not binding on the Court.

- 7 -

element of the offense of which he has been convicted." *Id.*

The Supreme Court has applied these principles to several claims for prospective relief. For example, in *Dotson*, the court considered two inmates' § 1983 claims requesting declarations that the rules and procedures used in their parole reviews were unconstitutional and an injunction ordering prison officials to conduct a new review or hearing. *Wilkinson v. Dotson*, 544 U.S. 74, 77 (2005). The court held that because success for the plaintiffs meant, at most, new hearings or reviews, the § 1983 claims did not "necessarily imply the invalidity of [their] conviction[s] or sentence[s]." *Id.* at 1248 (quoting *Heck*, 512 U.S. at 487). Similarly, in *Edwards*, the court noted that a request for prospective relief requiring a prison to time-stamp witness statements for future use at hearings would "ordinarily" be allowed under § 1983. *Edwards*, 520 U.S. at 648.

The Ninth Circuit has considered similar claims and concluded that they are not barred. For example, in *Huftile v. Miccio-Fonseca*, 410 F.3d 1136 (9th Cir. 2005), a plaintiff had been confined under California's Sexually Violent Predators Act after being evaluated by a mental health professional who allegedly violated the plaintiff's due process, privacy, and equal protection rights while investigating and interviewing the plaintiff. 410 F.3d at 1137–38. The court held that plaintiff's damages claims for unreasonable search were barred, but that his request for an injunction "prevent[ing] Defendant from inflicting further injury" was not. *Id.* at 1141. Similarly, in *Osborne v. District Attorney's Office for Third Judicial District*, 423 F.3d 1050 (9th Cir. 2005), the Ninth Circuit held that "*Heck* does not bar a prisoner's § 1983 action seeking post-conviction access to biological evidence in the government's possession." 423 F. 3d at 1056. There, the court emphasized that obtaining access to evidence, like receiving new hearings in *Dotson*, would not necessarily invalidate the conviction because that evidence "may prove exculpatory, inculpatory, or inconclusive." *Id.* at 1054–55.

What these cases have in common, and what makes them different than the present case, is that the plaintiffs did not directly attack the provision under which they had been punished. Here, however, Plaintiffs request that the Court declare unconstitutional the

- 8 -

very code (or application thereof) under which Mr. Salman was convicted. Although it appears that the Ninth Circuit has not considered a similar claim, at least one circuit court of appeals has held that such a claim is barred by *Heck*. *Clarke v. Stalder* 154 F.3d 186, 189 (5th Cir. 1998).

In *Clarke*, the Fifth Circuit, sitting en benc, considered a § 1983 plaintiff's request that the district court declare unconstitutional the state prison's policy forbidding inmates from threatening prison staff with legal action, under which the plaintiff had been punished. *Id.* at 189. Concluding that the request was barred, the court reasoned:

> The type of prospective injunctive relief sought in *Edwards*—date-stamping witness statements—is, however, very different from that sought by Clarke in the case at hand. *See id.* Indeed, unlike the sort of prospective relief envisioned by the Supreme Court in *Edwards* that may have only an "indirect impact" on the validity of a prisoner's conviction, *see Orellana v. Kyle,* 65 F.3d 29, 31 (5th Cir.1995); *see also Neal v. Shimoda,* 131 F.3d 818, 824 (9th Cir. 1997), the type of prospective injunctive relief that Clarke requests in this case—a facial declaration of the unconstitutionality of the "no threats of legal redress" portion of Rule 3—is so intertwined with his request for damages and reinstatement of his lost good-time credits that a favorable ruling on the former would "necessarily imply" the invalidity of his loss of good-time credits. *See Edwards,* 520 U.S. at ——, 117 S.Ct. at 1587 (stating that "the nature of the challenge to the procedures could be such as necessarily to imply the invalidity of the judgment").

*Id.*

The Court agrees with the reasoning of the Fifth Circuit. A § 1983 plaintiff's request that a federal court declare unconstitutional the very statute (or its application to the plaintiff) under which he was convicted in state court is no different than a request that a federal court invalidate the conviction itself. Just as a plaintiff is not permitted to attack the validity of his conviction by raising a § 1983 claim that would require him to

negate an element of his crime, *Heck*, 512 U.S. at 486 n.6, neither is he allowed to attack his conviction by raising a claim that would require him to prove an affirmative defense to his crime. Under either scenario, the § 1983 plaintiff is requesting that the court make a finding that would necessarily imply the invalidity of his conviction.

Such a claim is different than the cases discussed above, in which the plaintiffs sought access to evidence, additional procedural rights, and prevention of unreasonable searches. None of these requests for relief required the plaintiff to prove a defense to their convictions or to negate an element of their crimes; thus none of these forms of relief, if granted, would necessarily imply the invalidity of their punishments. Here, however, Plaintiffs seek to re-assert Mr. Salman's criminal defense in a federal civil action and requests that the Court validate those defenses in the form of declarations and injunctions. Such a request, if granted, would necessarily imply the invalidity of Mr. Salman's conviction, and is therefore not cognizable under § 1983.[3]

### C.   RLUIPA

RLUIPA does not cover all statutes, regulations, ordinances, or government actions. Rather, the act provides that "[n]o government shall impose or implement a *land use regulation* in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution." 42 U.S.C.A. § 2000cc(a)(1) (emphasis added). It further provides that "[n]o government shall impose or implement a *land use regulation* in a manner that treats a religious assembly or institution on less than

---

[3] Plaintiffs spent the majority of their time during oral argument contending that Defendants unconstitutionally enforced the Code against Plaintiffs based on their religious convictions. Specifically, Plaintiffs claimed at oral argument that on one occasion, Defendants came to Plaintiffs' house when they were having a barbeque and Defendants did nothing to stop the event. In contrast, Plaintiffs claim that on another occasion, Defendants came to Plaintiffs' house when they were hosting a bible study and escorted all of Plaintiffs' guests away.

The Court notes that the Amended Complaint does not mention the barbeque incident or any other specific instance where Defendants failed to enforce the Code for non-religious activities. Thus, Plaintiffs' claim that Defendants enforced the Code against them only with respect to their religious activities is not supported by plausible allegations of fact. Even if Plaintiffs' claims were well pleaded, however, they would still be barred by *Heck* because a finding that Defendants illegally enforced the Code against Mr. Salman would necessarily imply the invalidity of Mr. Salman's conviction.

equal terms with a nonreligious assembly or institution," and that "[n]o government shall impose or implement a *land use regulation* that discriminates against any assembly or institution on the basis of religion or religious denomination." *Id.* at § 2000cc(b)(1), (2) (emphasis added). Thus, RLUIPA applies solely to "land use regulations," and "does not 'displac[e] laws and prohibit[ ] official actions of almost every description and regardless of subject matter . . . . [nor does it] appl[y] to all federal and state law." *Guru Nanak Sikh Soc. of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 994 (9th Cir. 2006) (quoting *City of Boerne v. Flores* 521 U.S. 507, 532 (1997)).

RLUIPPA defines a "land use regulation" as "a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land." 42 U.S.C. § 2000cc-5(5). "Under this definition, a government agency implements a 'land use regulation' only when it acts pursuant to a 'zoning or landmarking law' that limits the manner in which a claimant may develop or use property in which the claimant has an interest." *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1036 (9th Cir. 2004) (citing *Prater v. City of Burnside,* 289 F.3d 417, 434 (6th Cir. 2002)). In harmony with this definition, most courts have declined to apply RULIPA to various types of property-related ordinances. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 434 (6th Cir. 2002) (city's decision to develop a road which a church requested be closed was not a "land use regulation"); *Second Baptist Church of Leechburg v. Gilpin Twp.*, 118 Fed. Appx. 615, 617 (3rd Cir. 2004) (city code requiring buildings to hook up to the sewer line was not a "land use regulation"); *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 640 (7th Cir. 2007) (the use of eminent domain to condemn a church's cemetery was not a "land use regulation").

Here, it is not clear whether the code sections at issue are "land use regulations" because the Amended Complaint does not specify which code sections allegedly violate RLUIPA. The Amended Complaint makes many references to "the Code," but only specifically references one section: § 303.[4] (Doc. 56 at ¶¶ 54–58). That section, however,

---

[4] The City of Phoenix has apparently adopted the building code promulgated by

1  is a definitional section, categorizing and labeling various types of building occupancy
2  and use. (Doc. 56 at ¶¶ 54–58); IBC § 303. It imposes no duties or penalties and gives no
3  clues as to how the various categories and labels operate in other sections of the code.
4  IBC § 303. As a result, it is impossible to surmise from the face of the Amended
5  Complaint whether the complained-of sections of the code, which has hundreds of sub-
6  sections, constitute "land use regulations."[5]

Additionally, the Court can find no allegations from which to draw a reasonable inference that the code sections at issue are "land use regulations." To the contrary, the few portions of the Amended Complaint that give some small clue as to the nature of the ordinances at issue indicate that they are building and safety codes, not zoning or landmarking laws. Most notably, the Amended Complaint refers to the code as the "City of Phoenix Building and Construction Codes." (Doc. 56 at ¶ 14). Another portion of the Amended Complaint alleges that Defendants sent Plaintiffs a letter declaring that Plaintiffs' property must "adhere to the 'Code' prior to [holding religious gatherings]," suggesting that the ordinances at issue do not command how property must be used (as a zoning law does), but rather imposes certain requirements before certain gatherings may take place (akin to a building or fire code). (*Id.* at ¶ 45). Therefore, the Amended Complaint fails to plausibly allege that the code sections at issue are covered by RLUIPA.

### D.   State Law Claims

The Amended Complaint alleges state law claims under FERA and the Arizona Constitution. As noted above, the Court initially dismissed these claims because it

---

the International Code Council. *Codes, Ordinances, Standards and Interpretations*, City of Phoenix, https://www.phoenix.gov/pdd/devcode/buildingcode (last visited June 8, 2015); International Code Council, *International Building Code*, http://publicecodes.cyberregs.com/icod/ibc/2009/index.htm [hereinafter "IBC"]. The sections cited by Plaintiffs appear unchanged since the time Defendants began taking action against Plaintiffs. *See* International Code Council, *International Building Code*, http://publicecodes.cyberregs.com/icod/ibc/2012/icod_ibc_2012_3_sec003.htm?bu=IC-P-2012-000001&bu2=IC-P-2012-000019.

[5] Even assuming that Plaintiffs refer to the code sections under which Mr. Salman was convicted, the Amended Complaint does not specify which sections those were.

- 12 -

concluded that it did not have subject matter jurisdiction under the *Rooker-Feldman* doctrine. The Ninth Circuit disagreed, holding that *Rooker-Feldman* did not strip the Court of jurisdiction over Plaintiffs' non-§ 1983 claims. (Doc. 49-1 at 3).

The Court's supplemental jurisdiction over Plaintiffs' state law claims, however, is predicated upon the Court's original jurisdiction over Plaintiffs' federal § 1983 and RLUIPA claims. Because the Court is dismissing all claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over the state law claims. 28 U.S.C.A. § 1367. Given that this case has not yet entered the discovery phase and that Plaintiffs have had ample opportunity in several other venues to litigate their grievances, the Court concludes that declining to exercise jurisdiction over quintessential state law issues such as interpretation of the Arizona Constitution and FERA "serves the objectives of economy, convenience and fairness to the parties, and comity." *Trustees of Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape & Maint.*, Inc., 333 F.3d 923, 925 (9th Cir. 2003).[6]

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss Salmans' Amended Complaint (Doc. 62) is **GRANTED**. The Clerk of Court shall enter judgment and dismiss the case.

Dated this 13th day of July, 2015.

James A. Teilborg
Senior United States District Judge

---

[6] The Court notes that Plaintiffs' FERA claims are likely also barred by collateral estoppel, given that the Maricopa Superior Court decision upholding Mr. Salman's conviction specifically addressed that issue. (Doc. 22-1, Ex. 1 at 5).