WO

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| Michael Salman, et al., | No. CV-12-01219-PHX-JAT |
|---|---|
| Plaintiffs, | **ORDER** |
| v. | |
| Phoenix, City of, et al., | |
| Defendants. | |

Pending before the Court is Plaintiffs' Motion for Leave to File Second Amended Complaint. (Doc. 75). The Court now rules on the motion.

**I.  Background**

The background of this case was recited by the Court in its July 14, 2015 order dismissing Plaintiffs' First Amended Complaint ("FAC"):

> In 2006, Plaintiffs moved into their current address and began holding weekly bible study meetings in their home. Plaintiff Michael Salman has been an ordained minister since 1996, and as such, he believes that he is called to be hospitable and to make himself available to his friends and family for studies and religious teaching.
>
> In 2007, Plaintiffs' neighbors began to complain to Defendant City of Phoenix about Plaintiffs' bible studies. As a result, the City sent Plaintiffs several letters informing them that they are not permitted to use their house as a church, citing the City's building code. Plaintiffs met with representative of the City to discuss the problem, but were unable to come to an agreement about Plaintiffs' religious use of their property.
>
> In 2009, Plaintiffs built a 2000 square foot game room in their back yard and began holding their bible studies there. Upon the completion of this addition, attendance at Plaintiffs' bible study rose from about fifteen to

about thirty-five. Eventually the City prosecuted Mr. Salman for violating the building code, and Mr. Salman was convicted after a trial at the Phoenix Municipal Court. The Maricopa County Superior Court, sitting as an appellate court, upheld the conviction.

. . . .

This is not the first time Plaintiff has sought relief from the City's actions. On April 4, 2011, Plaintiffs filed a Complaint in this Court, which was assigned to Judge Martone. (No. CV 11-646-PHX-FJM). Among other requests for relief, in that case Plaintiff sought a Temporary Restraining Order ("TRO") enjoining Defendants from implementing and enforcing the Codes and Ordinances against Plaintiffs to prohibit private worship, bible studies, and placement of a reader board with religious messages at their residence and from prosecuting, sentencing, arresting, or incarcerating Plaintiffs. (*See* CV 11-646-PHX-FJM, Doc. 2). In that Motion, Plaintiffs specifically referred to Michael Salman's conviction and sentence to serve sixty days in jail, three years of probation, $12,000 in fines, and the prohibition against Plaintiff Michael Salman hosting more than twelve people at his residence at a time. (*Id.*). At the time of that Motion, Plaintiffs' appeal of that sentence was pending before the Arizona Court of Appeals. (*Id.*).

After Judge Martone denied their Motion for Temporary Restraining Order (s*ee* CV 11-646-PHX-FJM at Doc. 5), Plaintiffs filed an amended Complaint (CV 11-646-PHX-FJM, Doc. 6) and an Amended Motion for Temporary Restraining Order (CV 11-646-PHX-FJM, Doc. 7), asserting the same essential theories and requests for relief asserted in their original Complaint and Motion for Temporary Restraining Order. Judge Martone denied Plaintiffs' Amended Motion for Temporary Restraining Order. (CV 11-646-PHX-FJM, Doc 10).

Defendants moved to dismiss the remainder of Plaintiffs' Amended Complaint under *Younger v. Harris*, 401 U.S. 37 (1971) and *Heck v. Humphrey*, 512 U.S. 477 (1994) and Judge Martone granted that Motion to Dismiss on *Younger* and *Heck* grounds in a detailed and reasoned opinion. *See Salman v. City of Phoenix*, No. CV 11-00646-PHX-FJM, 2011 WL 5024263 (D. Ariz. Oct. 21, 2011).

Less than a year after Judge Martone dismissed the case, Plaintiffs filed the current action. (Doc. 1). Plaintiffs' original Complaint requested (1) a Declaratory Judgment declaring that Defendants' implementation of the Code on privately held religious meetings violates the First and Fourteenth Amendments of the U.S. Constitution and the Arizona Free Exercise of Religion Act; (2) a permanent injunction enjoining Defendant from enforcing the Code on privately held religious gatherings; (3) a preliminary injunction enjoining the City of Phoenix from enforcing the Code on privately held religious gatherings; and (4) compensatory and punitive damages.

Plaintiffs also moved for the issuance of a preliminary injunction (Doc. 5) and TRO (Doc 4) enjoining Defendants from implementing the code on private religious gatherings and bible studies and restraining the execution of Mr. Salman's sentence. The Court denied these requests and dismissed the case for several reasons. First, the Court found that Plaintiffs' § 1983 claims were barred by *Heck* and the doctrine of collateral estoppel.

(Doc. 36 at 8–9). Second, the Court concluded that under the *Rooker-Feldman* doctrine, it lacked subject matter jurisdiction to consider Plaintiffs' remaining claims because doing so would "necessarily depend on this Court reaching opposite findings on the issues discussed in the Maricopa Superior Court's Order." (Doc. 36 at 12).

Plaintiffs appealed the Court's dismissal of the case to the United States Court of Appeals for the Ninth Circuit, which reversed and remanded. (Doc. 49-1). Importantly, as the Ninth Circuit's mandate pointed out, Plaintiffs did not appeal and the Ninth Circuit did not review the Court's dismissal of Plaintiffs' § 1983 damages claims on *Heck* and collateral estoppel grounds. (*Id.* at 2). Rather, the only issue the Ninth Circuit reviewed was whether "under the *Rooker–Feldman* doctrine . . . [the Court] lacked subject matter jurisdiction over [Plaintiffs'] request for an order enjoining the City from implementing or enforcing Section 303 of the 2006 Phoenix Building Code on private religious gatherings and bible studies and over their other remaining claims." (Doc. 49-1 at 2). On that issue, the Ninth Circuit held that the Court does, in fact, have subject matter jurisdiction over Plaintiffs' non-§ 1983 claims because *Rooker-Feldman* does not strip jurisdiction when "a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." (*Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005)).

Plaintiffs then amended their Complaint in a way that, in their own words, "does not differ much from the Original Complaint other than it focuses and clarifies the core issue, which is the Defendants['] application of a 'Code' intended for public use against private religious gatherings, specifically the Plaintiffs." (Doc. 64 at 2). The Amended Complaint requests relief similar to that requested in the Original Complaint. Specifically, the Amended Complaint requests: (1) a declaratory judgment declaring that enforcement of the Code against those who hold private religious meetings on their property violates the First and Fourteenth Amendments to the United States Constitution and the Arizona Free Exercise of Religion Act ("FERA"); (2) a permanent injunction enjoining Defendants from enforcing the "Code" against land owners holding private religious meetings and from "treating private religious gathering and assemblies on less than equal terms as non-religious gatherings and assemblies"; and (4) compensatory and punitive damages. (Doc. 56 at 21–22).

Defendants moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).

(Doc. 73 at 1–2).

On July 14, 2015, the Court granted Defendants' motion to dismiss the FAC. (Doc. 73). On July 21, 2015, Plaintiffs filed a motion to amend their Complaint and lodged a proposed Second Amended Complaint ("SAC"), which Defendants oppose. (Docs. 75, 76, 79). Plaintiffs' motion to amend is fully briefed.

- 3 -

## II.  Discussion

The Court should freely give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a). "In exercising its discretion[,] . . . 'a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities. . . . Thus, 'Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality.'" *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (citations omitted); *accord Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (stating that leave to amend is generally allowed with "extraordinary liberality"). "This liberality . . . is not dependent on whether the amendment will add causes of action or parties." *DCD Programs, LTD. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

The extremely liberal policy in favor of amendments, however, is subject to some limitations.  Motions to amend need not be granted when the district court determines that there has been a showing of (2) bad faith, (3) prejudice to the opposing party, (4) futility of amendment, or (5) repeated failure to cure deficiencies by amendments previously allowed. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Thus, the Court need not allow a proposed amended complaint that suffers from the same defects that caused the original complaint to be dismissed. *See Canatella v. Jamison*, 9 F.3d 1550 (9th Cir. 1993) ("Indeed, the *second* amended complaint proposed by Canatella included the same vague, general and conclusory allegations of concerted state action as did the first amended complaint. The district court did not abuse its discretion in denying leave to amend." (emphasis in original)); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 818 (9th Cir. 1988) ("The deficiencies in the AFA complaint are not cured by new facts or allegations presented by appellants in the proposed Second Amended Complaint. Accordingly, the district court did not abuse its discretion in denying leave to amend by means of the Second Amended Complaint."). A litigant's right to amend their complaint under Rule 15(a) survives even the dismissal of the complaint. *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (citing *Bonanno v. Thomas*, 309 F.2d

320, 322 (9th Cir. 1962)).

Plaintiffs' proposed SAC contains claims under three statutes: (1) 42 U.S.C. § 1983, (2) the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, et seq., and (3) the Arizona Free Exercise of Religion Act ("FERA"), 41 A.R.S § 41-1493, et seq. The Court addresses the proposed SAC's claims under each of these statutes separately.

### A.   § 1983

The proposed SAC describes additional details not found in the FAC regarding the conflict that gave rise to this litigation. For example, the SAC describes the complaints made by neighbors about Plaintiffs' bible study groups, (Doc. 76 at ¶¶ 38–40, 56), the meetings Plaintiffs had with their city councilman and Defendants, (*id.* at ¶ 41–43), the correspondence that took place between Plaintiffs and Defendants, (i*d.* at ¶¶ 44–45, 49, 52–53), and an instance in which the Phoenix Fire Department was dispatched "to disperse a bible study of about 15 people at the resident of the plaintiffs," (*id.* at ¶ 48). Additionally, the proposed SAC deletes all mention of Mr. Salman's convictions, which heretofore have been at the center this controversy.

In its July 14, 2015 order, Court dismissed the § 1983 claims because they are barred by *Heck v. Humphrey*, 512 U.S. 477, 487 (1994) and because Judge Martone's decision collaterally estops Plaintiffs from re-litigating those claims. (Doc. 73 at 6). While the added historical details in the proposed SAC give context to the parties' dispute, they ultimately do nothing to alter the Court's analysis; Judge Martone's decision still commands preclusive effect and Plaintiffs' claims still necessarily imply the invalidity of Mr. Salman's conviction.

The omission of Mr. Salman's convictions from the proposed SAC poses a slightly different question. If the Court looks only at the four corners of the proposed SAC, then it cannot consider Mr. Salman's conviction and must conclude that the *Heck* bar does not apply. But because Mr. Salman's convictions are a "matters of public record" that are not "subject to reasonable dispute," the Court need not ignore them when

- 5 -

determining whether Plaintiffs have stated a claim under § 1983. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)). Therefore, the Court's conclusion that Plaintiffs' § 1983 claims are barred by *Heck* also applies to Plaintiffs' proposed SAC and allowing Plaintiffs' amendments to their § 1983 claims would be futile.

### B.     RLUIPA

In its July 14, 2015 order, the Court explained that not every ordinance is subject to RLUIPA's requirements; rather, the act applies only to "land use regulations," which are defined as "zoning or landmarking law[s] . . . that limit[] or restrict[] a claimant's use or development of land." (*Id.* at 10–11) (quoting 42 U.S.C. § 2000cc-5(5)). The Court concluded that the FAC did not state a claim under RLUIPA because it did not specify which substantive sections of the Code were being enforced against Plaintiffs. It was therefore impossible to tell whether RLUIPA applies or whether the Code imposes substantial burdens on Plaintiffs' free exercise. (Doc. 73 at 11–12). The Court further noted that "the few portions of the Amended Complaint that give some small clue as to the nature of the ordinances at issue indicate that they are building and safety codes, not zoning or landmarking laws." (Doc. 73 at 12).

Plaintiffs' proposed SAC does not remedy these flaws. Indeed, like the FAC, the SAC cites only § 303, which categorizes building occupancy and use but imposes no substantive duties. (Doc. 76 at ¶¶ 70–101). Also like the FAC, the few allegations in the SAC that hint at the substantive provisions in the Code largely indicate that those provisions are not zoning or landmarking laws. For example, one allegation calls the Code a "commercial or assembly construction code[]." (Doc. 76 at ¶ 65). Another allegation states that Plaintiffs were required to "develop a half street in front of their home . . . which would include adding an expanded roadway, pavement, asphalt, curb, gutter, and sidewalk among other things." (*Id.* at ¶ 58). From these descriptions, it appears that the Code sections enforced against Plaintiffs (and which Plaintiffs seek to enjoin Defendant from enforcing in the future), regulate construction, safety, and traffic,

and do not resemble zoning or landmarking laws.[1] *Zoning Ordinance*, Black's Law Dictionary (10th ed. 2014) ("A city ordinance that regulates the use to which land within various parts of the city may be put [and] allocates uses to the various districts of a municipality, as by allocating residences to certain parts and businesses to other parts."). As such, the Code appears to be analogous to the types of laws that courts have held are not covered by RLUIPA. *E.g.*, *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 434 (6th Cir. 2002) (city's decision to develop a road which a church requested be closed was not a "land use regulation"); *Second Baptist Church of Leechburg v. Gilpin Twp.*, 118 Fed. Appx. 615, 617 (3rd Cir. 2004) (city code requiring buildings to hook up to the sewer line was not a "land use regulation"); *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 640 (7th Cir. 2007) (the use of eminent domain to condemn a church's cemetery was not a "land use regulation"); *Anselmo v. Cnty. of Shasta, Cal.*, 873 F. Supp. 2d 1247, 1256 (E.D. Cal. 2012) (Americans with Disabilities Act was not a "land use regulation").

In short, the proposed SAC does not specify which Code sections Plaintiffs challenge, and the few allegations that give some information about the Code sections at issue indicate that they are not "land use regulations" governed by RLUIPA. These are precisely the same deficiencies identified by the Court in its order dismissing the FAC. Accordingly, the proposed SAC fails to state a claim under RLUIPA and allowing the proposed amendments to Plaintiffs' RLUIPA claims would be futile.

**C.   FERA**

In its July 14, 2015 order, the Court declined to exercise supplemental jurisdiction over Plaintiff's FERA claim, finding that because "this case has not yet entered the discovery phase and [because] Plaintiffs have had ample opportunity in several other venues to litigate their grievances, . . . declining to exercise jurisdiction over

---

[1] Although several allegations classify the Code provisions as "zoning codes," (Doc. 76 at ¶¶ 87, 112), these conclusory characterizations are unsupported by factual allegations and therefore are not sufficient to state a claim. *Ove v. Gwinn*, 264 F.3d 817, 821 (9th Cir. 2001).

- 7 -

1 quintessential state law issues such as interpretation of . . . FERA 'serves the objectives
2 of economy, convenience and fairness to the parties, and comity.'" (Doc. 73 at 13)
3 (quoting *Trustees of Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley*
4 *Landscape & Maint.*, Inc., 333 F.3d 923, 925 (9th Cir. 2003)). The Court further
5 elaborated that "Plaintiffs' FERA claims are likely also barred by collateral estoppel,
6 given that the Maricopa Superior Court decision upholding Mr. Salman's conviction
7 specifically addressed that issue." (*Id.* at 13 n.6) (citing (Doc. 22-1, Ex. 1 at 5)).

8 This reasoning also applies to Plaintiffs' FERA claims in the proposed SAC.
9 Because, as explained above, Plaintiffs have failed to cure the deficiencies in their federal
10 claims, those claims remain dismissed. Thus, even if the Court allowed Plaintiffs'
11 amendments to their FERA claims, the Court would decline to exercise supplemental
12 jurisdiction over those claims for the same reasons the Court declined to exercise
13 supplemental jurisdiction over the FAC. The Court therefore concludes that allowing
14 Plaintiffs' proposed amendments[2] to their FERA claims would be futile.

15 **D.  Future Motion to Amend**

16 Although the Court concludes that allowing the proposed SAC would be futile, the
17 Court cannot conclude that no possible amendments could cure the FAC's defects.
18 Accordingly, the Court will not enter judgment at this time. If, however, Plaintiffs fail to
19 file a motion to amend by September 11, 2015, the Clerk of the Court shall enter
20 judgment in favor of Defendants.

21 **III.  Conclusion**
22 Accordingly,
23 **IT IS ORDERED** that Plaintiffs' Motion for Leave to File Second Amended
24 Complaint, (Doc. 75), is **DENIED**.
25 / / /
26 / / /

---

28 [2] It is not even clear that the SAC alleges violations of FERA. Counts I and II of the SAC each mention FERA in the heading, but allege only RLUIPA violations in the numbered allegations. (Doc. 76 at ¶¶ 102–118).

1     **IT IS FURTHER ORDERED** that if Plaintiffs fail to file another motion to
2 amend by September 11, 2015, the Clerk of the Court shall enter judgment in favor of
3 Defendants and dismiss this case.
4     Dated this 27th day of August, 2015.

James A. Teilborg
Senior United States District Judge