WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Salman, et al., | No. CV-12-01219-PHX-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| Phoenix, City of, et al., | |
| Defendants. | |

Pending before the Court is Plaintiffs' Motion for Leave to File Third Amended Complaint ("TAC"). (Doc. 84). The Court now rules on the motion.[1]

## I.   Background

The Court has now had several opportunities to address the factual and procedural background of this case. For context, the Court will set forth in full the background from its July 14, 2015, Order dismissing Plaintiffs' First Amended Complaint, ("FAC"), (Doc. 73), as well as a synopsis of subsequent activity.

> In 2006, Plaintiffs moved into their current address and began holding weekly bible study meetings in their home. Plaintiff Michael Salman has been an ordained minister since 1996, and as such, he believes that he is

---

[1] Plaintiffs requested oral argument for this motion. (Doc. 84 at 1). The Court will deny this request, as both parties have submitted memoranda discussing the law and facts in support of their positions and oral argument will not aide the Court's decisional process. *See e.g.*, *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *Lake at Las Vegas Investors Group, Inc. v. Pacific. Dev. Malibu Corp.*, 933 F.2d 724, 729 (9th Cir. 1991). Moreover, Plaintiffs will be permitted to re-file a motion for leave to file an amended complaint that remedies the TAC's flaws by Tuesday, February 16, 2016.

called to be hospitable and to make himself available to his friends and family for studies and religious teaching.

In 2007, Plaintiffs' neighbors began to complain to Defendant City of Phoenix about Plaintiffs' bible studies. As a result, the City sent Plaintiffs several letters informing them that they are not permitted to use their house as a church, citing the City's building code. Plaintiffs met with representative of the City to discuss the problem, but were unable to come to an agreement about Plaintiffs' religious use of their property.

In 2009, Plaintiffs built a 2000 square foot game room in their back yard and began holding their bible studies there. Upon the completion of this addition, attendance at Plaintiffs' bible study rose from about fifteen to about thirty-five. Eventually the City prosecuted Mr. Salman for violating the building code, and Mr. Salman was convicted after a trial at the Phoenix Municipal Court. The Maricopa County Superior Court, sitting as an appellate court, upheld the conviction.

. . . .

This is not the first time Plaintiff has sought relief from the City's actions. On April 4, 2011, Plaintiffs filed a Complaint in this Court, which was assigned to Judge Martone. (No. CV 11-646-PHX-FJM). Among other requests for relief, in that case Plaintiff sought a Temporary Restraining Order ("TRO") enjoining Defendants from implementing and enforcing the Codes and Ordinances against Plaintiffs to prohibit private worship, bible studies, and placement of a reader board with religious messages at their residence and from prosecuting, sentencing, arresting, or incarcerating Plaintiffs. (*See* CV 11-646-PHX-FJM, Doc. 2). In that Motion, Plaintiffs specifically referred to Michael Salman's conviction and sentence to serve sixty days in jail, three years of probation, $12,000 in fines, and the prohibition against Plaintiff Michael Salman hosting more than twelve people at his residence at a time. (*Id.*). At the time of that Motion, Plaintiffs' appeal of that sentence was pending before the Arizona Court of Appeals. (*Id.*).

After Judge Martone denied their Motion for Temporary Restraining Order (s*ee* CV 11-646-PHX-FJM[,] []Doc. 5), Plaintiffs filed an amended Complaint (CV 11-646-PHX-FJM, Doc. 6) and an Amended Motion for Temporary Restraining Order (CV 11-646-PHX-FJM, Doc. 7), asserting the same essential theories and requests for relief asserted in their original Complaint and Motion for Temporary Restraining Order. Judge Martone denied Plaintiffs' Amended Motion for Temporary Restraining Order. (CV 11-646-PHX-FJM, Doc 10).

Defendants moved to dismiss the remainder of Plaintiffs' Amended Complaint under *Younger v. Harris*, 401 U.S. 37 (1971) and *Heck v. Humphrey*, 512 U.S. 477 (1994) and Judge Martone granted that Motion to Dismiss on *Younger* and *Heck* grounds in a detailed and reasoned opinion. *See Salman v. City of Phoenix*, No. CV 11-00646-PHX-FJM, [2011 U.S. Dist. LEXIS 122387] (D. Ariz. Oct. 21, 2011).

Less than a year after Judge Martone dismissed the case, Plaintiffs filed the current action. (Doc. 1). Plaintiffs' original Complaint requested (1) a Declaratory Judgment declaring that Defendants' implementation of the Code on privately held religious meetings violates the First and

Fourteenth Amendments of the U.S. Constitution and the Arizona Free Exercise of Religion Act; (2) a permanent injunction enjoining Defendant from enforcing the Code on privately held religious gatherings; (3) a preliminary injunction enjoining the City of Phoenix from enforcing the Code on privately held religious gatherings; and (4) compensatory and punitive damages.

Plaintiffs also moved for the issuance of a preliminary injunction (Doc. 5) and TRO (Doc 4) enjoining Defendants from implementing the code on private religious gatherings and bible studies and restraining the execution of Mr. Salman's sentence. The Court denied these requests and dismissed the case for several reasons. First, the Court found that Plaintiffs' § 1983 claims were barred by *Heck* and the doctrine of collateral estoppel. (Doc. 36 at 8–9). Second, the Court concluded that under the *Rooker-Feldman* doctrine, it lacked subject matter jurisdiction to consider Plaintiffs' remaining claims because doing so would "necessarily depend on this Court reaching opposite findings on the issues discussed in the Maricopa Superior Court's Order." (Doc. 36 at 12).

Plaintiffs appealed the Court's dismissal of the case to the United States Court of Appeals for the Ninth Circuit, which reversed and remanded. (Doc. 49-1). Importantly, as the Ninth Circuit's mandate pointed out, Plaintiffs did not appeal and the Ninth Circuit did not review the Court's dismissal of Plaintiffs' § 1983 damages claims on *Heck* and collateral estoppel grounds. (*Id.* at 2). Rather, the only issue the Ninth Circuit reviewed was whether "under the *Rooker–Feldman* doctrine . . . [the Court] lacked subject matter jurisdiction over [Plaintiffs'] request for an order enjoining the City from implementing or enforcing Section 303 of the 2006 Phoenix Building Code on private religious gatherings and bible studies and over their other remaining claims." (Doc. 49-1 at 2). On that issue, the Ninth Circuit held that the Court does, in fact, have subject matter jurisdiction over Plaintiffs' non-§ 1983 claims because *Rooker-Feldman* does not strip jurisdiction when "a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." (*Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005)).

Plaintiffs then amended their Complaint in a way that, in their own words, "does not differ much from the Original Complaint other than it focuses and clarifies the core issue, which is the Defendants['] application of a 'Code' intended for public use against private religious gatherings, specifically the Plaintiffs." (Doc. 64 at 2). The Amended Complaint requests relief similar to that requested in the Original Complaint. Specifically, the Amended Complaint requests: (1) a declaratory judgment declaring that enforcement of the Code against those who hold private religious meetings on their property violates the First and Fourteenth Amendments to the United States Constitution and the Arizona Free Exercise of Religion Act ("FERA"); (2) a permanent injunction enjoining Defendants from enforcing the "Code" against land owners holding private religious meetings and from "treating private religious gathering[s] and assemblies on less than equal terms as non-religious gatherings and assemblies"; and (4) compensatory and punitive damages. (Doc. 56 at 21–22).

Defendants moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).

(Doc. 73 at 1–2).

The Court granted Defendant's[2] motion, finding that Plaintiffs' 42 U.S.C. § 1983 (2012) claims remained barred by *Heck* and collateral estoppel by way of Judge Martone's order in *Salman*, 2011 U.S. Dist. LEXIS 122387, at *11-*12. Further, Plaintiffs failed to "state a claim under [the Religious Land Use and Institutionalized Persons Act ("RLUIPA")] because [they] did not specify which substantive sections of the [Phoenix Building] Code were being enforced against Plaintiffs," and therefore it was "impossible to tell whether RLUIPA applies or whether the Code imposes substantial burdens on Plaintiffs' free exercise." (Doc. 81 at 6; Doc. 73 at 11-12). Having found that Plaintiffs failed to state a federal claim that was plausible on its face, the Court declined to exercise supplemental jurisdiction over Plaintiffs' state law claims[3] in the interest of judicial "economy, convenience and fairness to the parties, and comity," and dismissed the case. (Doc. 81 at 8; Doc. 73 at 13).

Plaintiffs responded by seeking leave to file a Second Amended Complaint ("SAC"), (Doc. 75), and again brought claims pursuant to 42 U.S.C. § 1983, RLUIPA, 42 U.S.C. § 2000cc, et seq., and state law claims under FERA, 41A.R.S § 41-1493, et seq.. (Doc. 81 at 5). On August 27, 2015, the Court concluded that granting Plaintiffs leave to file the SAC "would be futile," and denied the motion. (Doc. 81 at 8). The Court found that even though Plaintiffs' proposed SAC removed all reference to Mr. Salman's

---

[2] As of April 1, 2015, the City of Phoenix was the only remaining defendant in this matter. (*See* Doc. 58 (minute entry in which this Court dismissed all fictitious defendants from the suit)). Plaintiffs' TAC names, in addition to the City of Phoenix, numerous fictitious defendants. (Doc. 85 at 1). "Generally, the Federal Rules of Civil Procedure do not permit the use of Doe defendants." *Ivan v. Wells Fargo Bank*, *N.A.*, 12-CV-1065-PHX-JAT, 2012 U.S. Dist. LEXIS 105817, at *6 (D. Ariz. July 30, 2012)(citing Fed. R. Civ. P. 10(a); *Craig v. U.S.*, 413 F.2d 854, 856 (9th Cir. 1969)). Plaintiffs have offered no persuasive reason to depart from the general disfavor towards the pleading of fictitious defendants in federal court. The Court will therefore utilize the singular shorthand of "Defendant" to refer to the City of Phoenix throughout this Order, reflecting its status as the only properly pleaded defendant in this matter.

[3] The Court read Plaintiffs' FAC to include both claims under FERA and the Arizona Constitution. (Doc. 73 at 12). Plaintiffs' SAC included multiple claims under FERA. (Doc. 81 at 7-8). Plaintiffs' TAC pleaded a FERA claim in both count one and count two. (Doc. 85 at 19, 20).

convictions, his criminal convictions are "matters of public record and not subject to reasonable dispute," (*id.* at 5-6), and "the Court need not ignore them when determining whether Plaintiffs have stated a claim under § 1983." (*Id.* at 6 (citation omitted)). Thus, Plaintiffs' § 1983 claims were barred by *Heck*, 512 U.S. at 487, and Plaintiffs' § 1983 damages claim was barred by collateral estoppel.[4] (Doc. 81 at 6). With respect to Plaintiffs' RLUIPA claim, Plaintiffs failed to remedy the FAC's flaws, as the SAC did not "specify which substantive sections of the [City of Phoenix Building] Code were being enforced against Plaintiffs," and the "few allegations in the SAC that hint[ed] at the substantive provisions in the Code largely indicate[d] that those provisions are not zoning or landmarking laws," as they appeared to "regulate construction, safety, and traffic." (*Id.* at 6-7). With no viable federal claims pleaded in the SAC, the Court again declined to exercise supplemental jurisdiction over Plaintiffs' state law FERA claims. (*Id.* at 7 (citation omitted)). Although Plaintiffs' proposed SAC was futile, the Court could not conclude that no amendment could cure the proposed Complaint's defect, and withheld entering judgment at that time, permitting Plaintiffs to file another motion for leave to amend. (Doc. 81 at 8). Plaintiffs timely moved for leave to file a TAC. (Doc. 84).

In the intervening months, Plaintiffs filed a Motion for Preliminary Injunction, (Doc. 90), which has been fully briefed, a motion for Temporary Restraining Order, (Doc. 91), which the Court denied in a December 21, 2015, Order, (Doc. 92), and a motion for reconsideration, (Doc. 93), that was denied. (Doc. 95). Having set forth the pertinent factual and procedural background, the Court now turns to the motion.

## II. Legal Standard

The Court should freely give leave to amend "when justice so requires." Fed. R.

---

[4] The SAC also included a claim for "prospective relief under § 1983 in the form of various injunctions and declaratory judgments." (Doc. 73 at 6). The Court found that Plaintiffs' requested relief, although prospective in nature, nonetheless asked the Court to "declare unconstitutional the very statute (or its application to the plaintiff) under which [Michael Salman] was convicted in state court," which is "no different than a request that a federal court invalidate the conviction itself." (*Id.* at 9).

- 5 -

Civ. P. 15(a). "In exercising its discretion[,] . . . 'a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities.'" *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (citation omitted). "Thus, 'Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality.'" *Id.* (citations omitted); *accord Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (stating that leave to amend is generally allowed with "extraordinary liberality"). "This liberality . . . is not dependent on whether the amendment will add causes of action or parties." *DCD Programs, LTD. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

The extremely liberal policy in favor of amendments, however, is subject to some limitations. Motions to amend need not be granted when the district court determines that there has been a showing of (1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) prejudice to the opposing party, (4) futility of amendment, or (5) repeated failure to cure deficiencies by amendments previously allowed. *Schmidt v. PNC Bank, NM*, 591 Fed. Appx. 642, 643 (9th Cir. 2015) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Thus, the Court need not allow a proposed amended complaint that suffers from the same defects that caused the original complaint to be dismissed. *See Canatella v. Jamison*, 9 F.3d 1550 (9th Cir. 1993) (emphasis in original) ("Indeed, the *second* amended complaint proposed by Canatella included the same vague, general and conclusory allegations of concerted state action as did the first amended complaint. The district court did not abuse its discretion in denying leave to amend."); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 818 (9th Cir. 1988) ("The deficiencies in the AFA complaint are not cured by new facts or allegations presented by appellants in the proposed Second Amended Complaint. Accordingly, the district court did not abuse its discretion in denying leave to amend by means of the Second Amended Complaint."). However, in some circumstances, a litigant's right to amend their complaint under Rule 15(a) survives even the dismissal of the complaint. *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Constr. Trades Dep't*, 770 F.3d 834, 845 (9th Cir. 2014) (other

citations omitted) (citing *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc)).

### III. Discussion

Plaintiffs assert that the proposed TAC will "bring resolution to the questions of law and allow justice to be served," and that it "clarif[ies] the violations of the Defendant against the Plaintiffs and include[s] information that Plaintiffs did not have until after discovery, information that is important and vital to the allegations . . . ." (Doc. 84 at 1). The TAC brings claims under three statutes, (1) 42 U.S.C. § 1983, (2) RLUIPA, 42 U.S.C. § 2000cc, et seq., (3) FERA, 41 A.R.S § 41-1493, et seq., as well as (4) a constitutional challenge to the Phoenix Building Code itself. The Court will address each claim separately.

### A.    42 U.S.C. § 1983

The Court acknowledges that it is treading over familiar ground in its discussion of Plaintiffs' § 1983 claims. This is intentional. The Court seeks to clearly impress upon Plaintiffs the fatal flaw in their § 1983 claims that has been present in each iteration of the Complaint. On October 20, 2011, Judge Martone dismissed Plaintiffs' claim for § 1983 damages, finding that the Complaint asked the Court to order an "award of damages based on a finding that the ordinances under which plaintiffs were convicted were unconstitutional," which would render Plaintiff Michael Salman's criminal convictions invalid. *Salman*, 2011 U.S. Dist. LEXIS 122387, at *11-*12. Such an action is barred under *Heck*, 512 U.S. at 486-87. *Id.* Because Plaintiffs failed to show the Court that Mr. Salman's convictions had been "expunged or otherwise reversed," the § 1983 claim for damages was dismissed. *Id.* at *12.

Plaintiffs then filed a new suit in this Court seeking, among other claims, injunctive relief and damages pursuant to § 1983. The Court dismissed the Complaint, finding that "[t]he only factual difference in the case currently before the Court and the case that was before Judge Martone is that Plaintiff's appeal [of his criminal conviction]

has now concluded," which "does nothing to effect the *Heck* bar to Plaintiffs' claims." (Doc. 36 at 9). Although Plaintiffs argued "that their new Complaint raise[d] issues that did not occur until after Judge Martone's prior Order," the Complaint still sought to "have the Court enjoin the conviction of Michael Salman based on essentially the same claims made in both complaints and were seeking the same relief before Judge Martone." (*Id.* at 10). Thus, Plaintiffs' § 1983 claim was premature under *Heck* and barred by collateral estoppel. (*Id.* at 12).

Plaintiffs appealed to the United States Court of Appeals for the Ninth Circuit, but did not raise the issue of the § 1983 damages claim and the effect of *Heck* and collateral estoppel. (Doc. 73 at 3; Doc. 49-1 at 1-2). The Ninth Circuit's mandate had no impact on this aspect of the Court's Order. Therefore, when the Court considered Plaintiffs' FAC after remand, the Court reaffirmed its conclusion that Plaintiffs' § 1983 damages claim was barred by *Heck* and collateral estoppel. However, the FAC also sought injunctive relief under § 1983. Analyzing the issue for the first time, the Court found that Plaintiffs' claim still sought to have the Court "declare unconstitutional the very statute (or its application to the plaintiff) under which [Michael Salman] was convicted in state court," which is "no different than a request that a federal court invalidate the conviction itself." (Doc. 73 at 9). Thus, Plaintiffs' request "that the court make a finding that would necessarily imply the invalidity of [Michael Salman's] conviction" was barred by *Heck*, 512 U.S. at 486-87, and Plaintiffs' § 1983 prospective relief claim was dismissed.

Plaintiffs then sought leave to file the SAC, which contained "additional details not found in the FAC regarding the conflict that g[a]ve rise to this litigation" and "delete[d] all mention of Mr. Salman's convictions." (Doc. 81 at 5). Despite these alterations, Plaintiffs' proposed SAC was futile. Mr. Salman's "convictions are [ ] 'matters of public record' that are not 'subject to reasonable dispute,'" and the Court may consider them. (*Id.* at 5-6 (citation omitted)). Plaintiffs' § 1983 claims remained barred by *Heck*, *Lee v. City of Los Angeles*, 250 F.3d 500, 504 (9th Cir. 1986), and collateral estoppel.

Undeterred, Plaintiffs have proffered a TAC. Substantively, little distinguishes the TAC from the SAC, which failed to remedy the defects of the Complaint and FAC. Outside of minor additions and alterations, the TAC substantially mirrors the SAC. Plaintiffs did, however, incorporate two substantive revisions: (1) a facial constitutional challenge to the Phoenix Building Code; and (2) facts showing that in August 2015, Plaintiffs contacted Defendant and requested a "formal interpretation" from Defendant to determine the permissible uses for Plaintiffs' property and whether Plaintiffs were permitted to increase the size of their weekly bible studies to 20 – 40 people.[5] (Doc. 84-1 at 15). Neither of these revisions alters the Court's analysis with respect to Plaintiffs' § 1983 claims.

The Court again finds that Plaintiffs' § 1983 claims are barred by *Heck*, 512 U.S. at 486-87.[6] Plaintiffs' TAC seeks injunctive relief and damages for government conduct centering on Defendant's promulgation and application of the Phoenix Building Code. "Plaintiff Michael Salman was . . . convicted of sixty-seven building and zoning code violations in 2010 by the Phoenix Municipal Court," *Salman*, 2011 U.S. Dist. LEXIS 122387, at *3, i.e., for violating the municipal code that Plaintiffs allege is unconstitutional. The Court cannot grant Plaintiffs' requested relief under § 1983 without making a finding that certain provisions of "the Code" (although the Court is unaware as to which) are unconstitutional, which would invalidate Mr. Salman's conviction. The Court may not do this. *Heck*, 512 U.S. at 486-87. The fact that Plaintiffs' SAC and TAC make no reference to Mr. Salman's criminal convictions is immaterial. They are "matters of public record" and the Court will consider "them when determining whether Plaintiffs have stated a claim under § 1983." (Doc. 81 at 5-6 (quoting *Lee*, 250 F.3d at 689)).

Plaintiffs' TAC does not remedy this flaw, which is present in each iteration of the Complaint. Plaintiffs have yet to show this Court that Mr. Salman's criminal convictions

---

[5] Defendant responded to Plaintiffs by letter and refused to answer their questions, citing "pending appeals." (Doc. 84-1 at 16).

[6] The Court also finds that Plaintiffs' § 1983 claim for damages remains barred by collateral estoppel. *See Salman*, 2011 U.S. Dist. LEXIS 122387, at *3, *11-*12.

for violating the Phoenix Building Code—the basis for Plaintiffs' § 1983 claims—have been "expunged or otherwise reversed." *Salman*, 2011 U.S. Dist. LEXIS 122387, at *12. It follows that granting Plaintiffs' motion for leave to file the proposed TAC is futile.[7]

**B.  RLUIPA**

The Court has explained that "RLUIPA applies solely to 'land use regulations.'" (Doc. 73 at 11 (quoting *Guru Nanak Sikh Soc. of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 994 (9th Cir. 2006)). The statute defines "land use regulation" as "a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land." (Doc. 73 at 11 (quoting 42 U.S.C. § 2000cc-5(5)). In prior iterations of the Complaint, Plaintiffs "ma[de] many references to 'the Code,'" but only specifically reference[d] one section: § 303." (Doc. 73 at 11). The Court explained that § 303 of the Phoenix Building Code is "a definitional section, categorizing and labeling various types of building occupancy and use" and that "it is impossible" for the Court to determine "whether the complained-of sections of the code, which has hundreds of subsections, constitute 'land use regulations.'" (*Id.* at 12). Plaintiffs' FAC failed for this reason.

Plaintiffs attempted to bolster the proposed SAC with additional factual pleadings. Although the SAC included "details . . . regarding the conflict that gave rise to this litigation," (Doc. 81 at 5), the Court found that the SAC failed to remedy the flaws contained in the FAC. (*Id.* at 6). Plaintiffs' SAC once again only cited to § 303, "which categorizes building occupancy and use but imposes no substantive duties." (*Id.*). Moreover, the "substantive provisions in the Code" that Plaintiffs "hint[ed] at" suggested that "those provisions are not zoning and landmarking laws," and thus are not the basis for a RLUIPA claim. (*Id.* (citation omitted). Succinctly, Plaintiffs' SAC suffered from "precisely the same deficiencies identified by the Court in its order dismissing the FAC."

---

[7] Mrs. Salman makes no argument that she should be able to individually challenge the Phoenix Code under § 1983 or that she has any threat of enforcement pending against her individually.

- 10 -

(*Id.* at 7).

Having considered Plaintiffs' TAC, the Court concludes that it, too, suffers from the same deficiencies as the SAC, and that "allowing the proposed amendments to Plaintiffs' RLUIPA claims would be futile." (Doc. 81 at 7). Plaintiffs' TAC does reference a second Phoenix code provision. Specifically, the TAC refers to the Phoenix Building Construction Code § 110.1, entitled "use and occupancy." (Doc. 84-1 at 4 n.3). But this provision simply mandates that "[n]o building or structure shall be used or occupied, and no change in the existing occupancy classification of a building or structure . . . shall be made until the building official has issued a Certificate of Occupancy." (*Id.*). The provision does nothing to suggest that it is a "zoning or landmarking law" that imposes substantive duties. (Doc. 73 at 11; Doc. 81 at 5). It simply establishes that a Certificate of Occupancy is a prerequisite for use or occupation, or a change in classification for some group of structures. This provision seems to "impose[] certain requirements before certain gatherings may take place (akin to a building or fire code)." (Doc. 73 at 12). In sum, nothing indicates that § 110.1 is a "land use regulation" governed by RLUIPA. Beyond the inclusion of § 110.1, Plaintiffs' TAC fails for the same reasons as the FAC and the SAC. § 303 of the Phoenix Building Code is merely "definitional" and "imposes no substantive duties," and the "few allegations that give some information about the Code sections at issue indicate that they are not 'land use regulations' governed by RLUIPA." (Doc. 81 at 7).

The Court finds that the TAC's proposed amendments to Plaintiffs' RLUIPA claims are futile.

**C.     The Constitutional Infirmity of the Phoenix Building Code**

As noted *supra*, the TAC contains new language challenging the constitutionality of the Phoenix Building Code. Specifically, Plaintiffs ask this Court to declare the "A Code" and "other zoning, construction codes, etc.," unconstitutional, (Doc. 84-1 at 23), arguing that "[t]he Defendant[']s codes and interpretations of the codes do not allow a person of normal intelligence to know what is permitted and what is not." (Doc. 84-1 at

23). Basically, Plaintiffs allege that the "codes and application of the codes are unconstitutionally broad and vague." (Doc. 84-1 at 23). The Court finds that this language amounts to a separate claim that provisions of the Phoenix Building Code are constitutionally infirm on vagueness grounds. *See Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam) (noting that federal courts should liberally construe the "inartful pleading" of pro se litigants); *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) (noting that courts in this Circuit should hold "pro se pleadings to a less stringent standard than formal pleadings prepared by lawyers").

Having reviewed Plaintiffs' TAC, the Court finds that it would be futile to permit Plaintiffs to add this claim. Plaintiffs have failed to assert which provisions of the Code they believe are unconstitutional. Plaintiffs only cite to two local "code" sections: Phoenix Building Code § 303.1 and Phoenix Construction Code § 110.1. (Doc. 84-1 at 4 n.2, 3). As the Court discussed previously, § 303 is a "definitional section, categorizing and labeling various types of building occupancy and use" and "imposes no duties or penalties." (Doc. 73 at 11-12). § 110 of the Phoenix Building Construction Code simply states that "[n]o building or structure shall be used or occupied, and no change in the existing occupancy classification . . . shall be made until the building official has issued a Certificate of Occupancy." Plaintiffs' TAC offers nothing to indicate how these specific Code provisions—or which other provisions Plaintiffs mean to assert—are constitutionally infirm. Federal Rule of Civil Procedure 8 mandates that a complaint "contain sufficient factual matter . . . accepted as true . . . stat[ing] a claim to relief that is 'plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The TAC's allegations are wholly conclusory, and fail to meet Rule 8's standard. It follows that the proposed amendment is futile.

**D.     FERA**

In its July 14, 2015, Order, the Court dismissed both of Plaintiffs' federal claims, and declined to exercise supplemental jurisdiction over Plaintiffs' FERA claim in the

interests of judicial "economy, convenience and fairness to the parties, and comity."[8] (Doc. 73 at 13 (quoting *Trustees of Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003)).

In its August 27, 2015, Order denying Plaintiffs' motion for leave to file the SAC, the Court reaffirmed its decision not to exercise supplemental jurisdiction over Plaintiffs' state-law claims, as the SAC "failed to cure the deficiencies in their federal claims," and "those claims remain dismissed." (Doc. 81 at 8). "Thus, even if the Court allowed Plaintiffs' amendments to their FERA claims, the Court would decline to exercise supplemental jurisdiction over those claims for the same reasons the Court declined to exercise supplemental jurisdiction over the FAC." (*Id.*).

The Court has found that Plaintiffs' proposed TAC fails to plead a viable federal claim. Thus, even if the proposed FERA amendments were permitted, the Court would decline to exercise supplemental jurisdiction over Plaintiffs' state-law claims,[9] and the proposed FERA amendments are futile.

Having reviewed the proposed TAC, the Court concludes that the proposed amendments to each of Plaintiffs' four substantive claims are futile. Accordingly, the Court will deny Plaintiffs' motion for leave to file an amended complaint.

### IV. Future Motion to Amend

Although the Court concludes that granting Plaintiffs' pending motion for leave to file an amended complaint would be futile—again—the Court cannot conclude that no possible amendments could cure the Complaints' defects. Therefore, the Court will not enter judgment at this time. But if Plaintiffs fail to file a motion to amend by February 16,

---

[8] The Court also found that "Plaintiffs' FERA claims are likely also barred by collateral estoppel, given that the Maricopa Superior Court decision upholding Mr. Salman's conviction specifically addressed that issue." (Doc. 73 at 13 n.6 (citing Doc. 22-1at 5)).

[9] The Court notes, again, that it is "not even clear that the [T]AC alleges violations of FERA. Counts I and II of the [T]AC each mention FERA in the heading, but allege only RLUIPA violations in the numbered allegations." (Doc. 81 at 8 n.2; Doc 84-1 at ¶¶ 112-129).

- 13 -

2016, the Clerk of the Court shall enter judgment in favor of Defendant.

The Court emphasizes that Plaintiffs' "repeated failure to cure deficiencies by amendments previously allowed" is grounds for denying future leave to amend. *Schmidt*, 591 Fed. Appx. At 643 (quoting *Foman*, 371 U.S. at 182). This will be Plaintiffs' final opportunity to amend the Complaint to attempt to cure the deficiencies identified herein. In other words, if Plaintiffs fail to state a claim in a proposed fifth version of the Complaint, the Court will deem that to be Plaintiffs' inability to state a claim and will not permit further opportunities to amend.

### V. Plaintiffs' Motion for Preliminary Injunction

Pending separately in this case is a Motion for Preliminary Injunction, (Doc. 90), filed by Plaintiffs' on December 7, 2015. Plaintiffs ask this Court to enjoin Defendant[10] from "treating private religious gatherings and assemblies at a residence on less than equal terms as non-religious gatherings and assemblies at a residence until this matter is finally determined." (*Id.* at 11). The motion has been fully briefed.

The Court concludes that in light of the fact that Plaintiffs have thus far failed to—and may never—lodge an actionable complaint against Defendant, a preliminary injunction is not appropriate at this time. The Court will deny Plaintiffs' Motion for Preliminary Injunction, (Doc, 90), without prejudice, and with invitation to re-file when (or if) Plaintiffs are given leave to file an amended complaint.

### VI. Conclusion

For the aforementioned reasons,

**IT IS ORDERED** that Plaintiffs' Motion for Leave to File Third Amended Complaint, (Doc. 84), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Preliminary Injunction,

---

[10] The Court notes that Plaintiffs' motion contains a number of improperly pleaded fictitious defendants, which the Court will not consider. *See supra*, note 2. Plaintiffs seek a preliminary injunction against one properly pleaded defendant—the City of Phoenix.

1 | (Doc. 90), is **DENIED**, without prejudice.

2 |      **IT IS FURTHER ORDERED** that if Plaintiffs fail to file another motion to
3 | amend by Tuesday, February 16, 2016, the Clerk of the Court shall enter judgment in
4 | favor of Defendant and dismiss this case with prejudice.

5 |      Dated this 26th day of January, 2016.

James A. Teilborg
Senior United States District Judge