WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Salman, et al., | No. CV-12-01219-PHX-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| City of Phoenix, et al., | |
| Defendants. | |

Pending before the Court is Plaintiffs' Motion for Leave to File Fourth Amended Complaint ("FAC"). (Doc. 100). Plaintiffs' motion is in response to the Court's January 27, 2016, Order denying Plaintiffs leave to file a Third Amended Complaint. (Doc. 97). In the Order, the Court found that the Third Amended Complaint's proposed amendments failed to address fatal shortcomings of the Second Amended Complaint, and that granting Plaintiffs leave to file would be futile. (*Id.* at 13). Having received the parties' filings and considered oral argument, the Court now rules on the motion.

## I. Background

The Court has, on several occasions, set forth in detail the factual allegations underlying Plaintiffs' lawsuit. (Doc. 97; Doc. 81; Doc 73). The Court need not do so again. For purposes of this Order, it is sufficient to note that on January 27, 2016, the Court denied Plaintiffs' motion for leave to file a Third Amended Complaint, and granted Plaintiffs a "final opportunity to amend the Complaint to attempt to cure the deficiencies

identified herein." (Doc. 97 at 14). Plaintiffs thereafter sought relief from the Order improperly under Federal Rule of Evidence 59(e). (Doc. 98). On March 3, 2016, Plaintiffs renewed their motion for leave to file an amended Complaint and filed the proposed FAC. (Doc. 100). The motion is fully briefed, and oral argument was heard on June 1, 2016.

## II.     Legal Standard

As noted by the Court in previous Orders, (Doc. 97; Doc. 81; Doc. 73), leave to amend a complaint should be granted with "extreme liberality" under Fed. R. Civ. P. 15(a). *Salman v. City of Phoenix*, CV-12-01219-PHX-JAT, 2016 U.S. Dist. LEXIS 9462, at *11-12 (D. Ariz. Jan. 27, 2016). But leave to amend is not granted in perpetuity, and is subject to certain limitations. *Id.* at *12. One such limitation—at issue here—is Plaintiffs' "repeated failure to cure deficiencies by amendments previously allowed." *Id.* (quoting *Schmidt v. PNC Bank*, *NA*, 591 Fed. Appx. 642, 643 (9th Cir. 2015)).

## III.     Discussion

Plaintiffs' proposed FAC includes substantive revisions to the Third Amended Complaint, and is comprised of six claims[1] alleged against Defendant[2] City of Phoenix.

---

[1] The FAC also pleads that "Defendants have violated . . . the Arizona Freedom of Religious Act (FERA) A.R.S. [§] 41-1493.03 when they treated religious gatherings on less than equal terms as non-religious gathers." (Doc. 101 at 3). Plaintiffs, however, failed to allege a specific FERA claim in the FAC. Even if the Court recognized this isolated assertion as an independent claim, and assuming the FAC contained sufficient factual allegations to make out a plausible FERA claim, the Court would decline to exercise supplemental jurisdiction over the claim under Title 28 U.S.C. § 1367(c)(3) (2012). As the Order fully details *infra*, Plaintiffs have failed to plead a non-futile federal claim, and the applicable "balance of factors" to be considered strongly supports declining to exercise supplemental jurisdiction over Plaintiffs' state law claims.

[2] As of April 1, 2015, the City of Phoenix was the only remaining defendant in this matter. (See Doc. 58 (minute entry in which this Court dismissed all fictitious defendants from the suit)). Plaintiffs name, in addition to the City of Phoenix, numerous fictitious

- 2 -

Plaintiffs have alleged five violations of their constitutional rights pursuant to 42, U.S.C. § 1983,[3] as well as a violation of the Free Exercise of Religion Under the Religious Land Use and Institutionalized Person Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc, et seq. According to Plaintiffs, the proposed FAC (and fifth iteration of the Complaint) makes "further emphasis on the violation of the [P]laintiffs' first, fifth, and fourteenth amendment rights"; it "also include[s] some facts . . . in reference to [the Harvest Christian Fellowship Community Church, Inc. ("HCFCC")[4]] and Michael Salman's conviction"; and it "show[s] that the [Plaintiffs] were being attacked for their personal religious gatherings prior to HCFCC['s] . . . existence and much after HCFCC . . . ceased

---

defendants. (Doc. 101 at 1). "Generally, the Federal Rules of Civil Procedure do not permit the use of Doe defendants." *Ivan v. Wells Fargo Bank*, *N.A*., 12-CV-1065-PHX-JAT, 2012 U.S. Dist. LEXIS 105817, at *6 (D. Ariz. July 30, 2012) (citing Fed. R. Civ. P. 10(a); *Craig v. U.S*., 413 F.2d 854, 856 (9th Cir. 1969)). Plaintiffs have offered no persuasive reason to depart from the general disfavor towards the pleading of fictitious defendants in federal court. The Court will therefore utilize the singular shorthand of "Defendant" to refer to the City of Phoenix throughout this Order, reflecting its status as the only properly pleaded defendant in this matter.

[3] The FAC does not explicitly plead a claim pursuant to 42 U.S.C. § 1983. Rather, the FAC asserts that Defendant has violated several of Plaintiffs' constitutional rights. Specifically, the FAC alleges violations of the First and Fourteenth Amendments. Plaintiffs seek declaratory relief, injunctive relief, and compensatory damages for violations of their rights under the federal Constitution, in addition to other "appropriate relief" for Defendant's alleged violation of RLUIPA. (Doc. 101 at 39-41). 42 U.S.C. § 1983 was specifically designed to provide remedy to parties that have been deprived of their rights. *See Cornejo v. County of San Diego*, 504 F.3d 853, 858 (9th Cir. 2007) (citation omitted) (noting that § 1983 "provides a vehicle for seeking relief for violation of the 'Constitution and laws'"). Given the remedies sought by Plaintiff, and the nature of Counts I-III, V, VI, the Court finds that Plaintiffs' claims are properly characterized as § 1983 claims against Defendant. This comports with prior iterations of Plaintiffs' proposed amended Complaint. (Doc. 85; Doc. 76; Doc. 56).

[4] The FAC marks the first time that facts relating to HCFCC have been pleaded. The FAC asserts that Plaintiffs deeded their property as a joint tenancy to HCFCC in or about October 2007, and it was then was "fined" for "violating building construction codes" by "holding worship" at Plaintiffs' residence in May and June 2009. (Doc. 101 at 12). HCFCC was thereafter dissolved by the Arizona Corporation Commission in or about July 2009. (*Id.* 11, 12).

to exist," and for HCFCC's "gathering on the property and not [Plaintiffs] gathering on the property." (Doc. 100 at 4).

**A.     Plaintiff's Federal Constitutional Claims**

As set forth *supra*, Plaintiffs have alleged five constitutional claims against Defendant pursuant to § 1983. To begin, the Court observes that the majority of factual allegations that comprise the individual claims are legal conclusions,[5] and do not inform the Court as to what behavior by Defendant allegedly constitutes a violation of Plaintiffs' constitutional rights. The Court must look to the rest of the pleading.

Having reviewed the entirety of the FAC, the Court finds that the pleaded facts establish that Plaintiffs' challenge Defendant's promulgation and application of certain portions of the Phoenix Building Construction Code (the "Code"), as violating Plaintiffs' constitutional rights.[6] The FAC asserts that "Defendant has applied and currently applies zoning, building, and constructions codes[,] including section 303 of the 2006 Phoenix Building Code[7] . . . [so] as to treat private religious gatherings at a residence on less than

---

[5] The Court need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

[6] The Court notes that certain facts in the FAC suggest discriminatory government action detached from application of the Code. The FAC pleads that "only their bible study gatherings were being targeted" and that after contacting Defendant, they were told by letter that "activities that involved participation by non-family members on the property could lead to non-compliance with City codes and ordinances if proper permits are not obtained." (Doc. 101 at 10). Plaintiffs also "sent pictures of other gatherings in the neighborhood and asked why others had the right to gather while plaintiffs did not have the right to gather for bible studies." (*Id.*). Because of the explicit mention of "City codes and ordinances" and "compliance" by Defendant, the Court finds that Defendant's actions here are tied to provisions of the Code, which serve as the basis for Plaintiffs' federal constitutional claims. The pleaded facts are insufficient to make out a plausible claim of discriminatory conduct by Defendant detached from application of the Code. Plaintiffs have failed to cite to, even in passing, other events held at residences that were treated in a more favorable manner when not in compliance with the Code.

[7] The most recent version of the Phoenix Building Construction Code was published in 2012 and became effective July 1, 2013.

- 4 -

equal terms as private non-religious gatherings at a residence." (Doc. 101 at 3). The FAC further alleges that Defendant's actions[8] "treat private worship at a residence differently than they treat similarly situated non-religious gathering[s] at a residence," (*id.* at 25), and that "Defendant's actions discriminate between religious gatherings and non-religious gatherings at a residence." (*Id.* at 23).

Additionally, Section VI of the FAC begins by setting forth two sections of the Code, §§ 303.1 and 303.4, (Doc. 101 at 15), and the FAC also asserts that Defendant "has applied and currently applies zoning, building and construction codes including . . . Section 110 [of the Phoenix Building Construction Code]" against them in a discriminatory manner. (*Id.* at 3). Defendant uses the Code to "treat private religious gatherings at a residence on less than equal terms as private non-religious gatherings at a residence," (*id.*), and that through application of the Code, Defendant has taken "a very prejudicial and discriminatory stance against the plaintiffs" causing "their private religious studies at their home among family and friends" to be classified as a place of worship.[9] (*Id.* at 19).

In 2010, Plaintiff Michael Salman was "convicted of sixty-seven building and zoning code violations" by the Phoenix Municipal Court. *Salman v. City of Phoenix*, CV 11-00646-PHX-FJM, 2011 U.S. Dist. LEXIS 122387, at *3 (D. Ariz. Oct. 20, 2011); *Salman*, 2016 U.S. Dist. LEXIS 9462, at *16 (citation omitted). Michael Salman's

---

[8] Although the FAC refers to Defendant's "actions" in certain places, suggesting behavior, the FAC attacks promulgation and application of a law. Coupled with Plaintiffs' focus on §§ 303.1, 303.4 and 111.1 of the Code, (Doc. 101 at 15), the Court finds that the FAC attacks the constitutionality of certain provisions of the Code.

[9] The Court is unclear as to what Plaintiffs allege where they plead that their home was classified as a place of worship "not based on any particular code, law, regulation or standard[,] but solely [by] an individual who was employed by the [D]efendant [to] determin[e] such use." (Doc. 101 at 19). This appears to contradict Plaintiffs' claims that Defendant's application of the Code has violated their constitutional rights. Given the nature of the FAC in its entirety and the lack of supporting pleaded facts to substantiate a separate theory that these were the capricious actions of a single government actor detached from any particular regulation or law, the Court dismisses this factual allegation.

1 conviction was affirmed by the Maricopa County Superior Court, and to date Plaintiffs have offered no evidence to suggest that his conviction for violating provisions of the Code has been "expuged or otherwise reversed." Nor have Plaintiffs made any attempt to allege that Michael Salman was convicted for violating provisions of the Code that do not serve as the basis for Plaintiffs' § 1983 claims.

The principal distinction between the Third Amended Complaint and the FAC appears to be the inclusion of factual allegations pertaining to HCFCC. (Doc. 101 at 12). The FAC pleads that in May of 2009, HCFCC "began holding worship" at Plaintiffs' residence, in June of 2009 "the City of Phoenix charged HCFCC[,] Inc. civilly for violating building construction codes," and that HCFCC was dissolved by the Arizona Corporation Commission in July of 2009. (*Id.*). Thus, Plaintiffs argue in their motion that "the conviction in the City of Phoenix Court was not for the gatherings held by Michael [and] Suzanne Salman but [for] those held by [HCFCC] in May and June of 2009 at the Salmans' home." (Doc. 100 at 3). The Court is not persuaded.

The FAC makes no mention of Michael Salman's conviction, but as the Court has stated previously, the Court may consider his convictions because it is a "matter[] of public record that [is] not subject to reasonable debate." *Salman*, 2016 U.S. Dist. LEXIS 9462, at *16 (internal quotation marks omitted) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 1986)). The presence of HCFCC, a corporate entity, or Plaintiffs' actions from 2007-2010, do nothing to address the issue that Michael Salman was convicted in 2010 for violating provisions of the Code. As far the FAC makes clear, Plaintiffs still appear to allege that the same provisions of the Code that Michael Salman was convicted of violating are the provisions that serve as the basis of their constitutional claims. If Plaintiffs were to prevail on their constitutional claims, it would still require that the Court "make a finding that would necessarily imply the invalidity of [his] conviction." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Because Plaintiffs have failed to show that Michael Salman's conviction has been expuged or reversed, and because Plaintiffs have failed to allege that a difference exists between the Code

1  provisions that led to Michael Salman's conviction and their civil constitutional claims,
2  the Court finds that Michael Salman's § 1983 claims against Defendant "have not yet
3  accrued under *Heck*." *Salman*, 2011 U.S. Dist. LEXIS 122387, at *11.

4  The Court's analysis continues, however. In the previous Order denying Plaintiffs'
5  motion for leave to file, the Court noted that the Third Amended Complaint did not plead
6  that Mrs. Salman "should be able to individually challenge the Phoenix Code under §
7  1983 or that she has any threat of enforcement pending against her individually." *Salman*,
8  2016 U.S. Dist. LEXIS 9462, at *18 n.7. Therefore, when the Court found that Michael
9  Salman's constitutional claims had not yet accrued under *Heck*, it was not necessary for
10 the Court to individually analyze any claims by Suzanne Salman. The FAC does not
11 explicitly plead individual § 1983 claims against Defendant by Suzanne Salman. But the
12 pleading does refer to "Plaintiffs" in the plural, and asserts that "they would be facing
13 criminal and civil violations personally" if Plaintiffs continued to disregard the Code and
14 hold religious services without obtaining a change in occupancy. (Doc. 101 at 12).
15 Plaintiffs' motion also notes that "Suzanne Salman is just as much a victim of the actions
16 of [Defendant] as Michael Salman was and was not a party to" his convictions. The Court
17 finds that while Plaintiffs' motion is borderline an improper attempt to amend the
18 Complaint by brief, *Frenzel v. Aliphcom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014), the
19 FAC contains sufficient allegations to establish that Suzanne Salman has individually
20 challenged Defendant's promulgation and prior application of provisions of the Code
21 under § 1983.

22 Defendant appears to argue, implicitly, that Suzanne Salman's § 1983 claims are
23 also barred by Michael Salman's 2010 conviction, asserting that "*Heck* does not apply
24 only to § 1983 claims based on allegedly unconstitutional criminal convictions," but that
25 it bars all claims that would "necessarily imply the invalidity" of a conviction. (Doc. 102
26 at 3). Defendant, however, fails to proffer case law supporting the assertion that the *Heck*
27 bar against Michael Salman's claims would extend to his spouse. To date, it appears that
28 the Ninth Circuit has not directly addressed the issue. *Ioane v. Spjute*, 2015 U.S. Dist.

LEXIS 4541, at *6 (E.D. Cal. Jan. 13, 2015). Nonetheless, existing authority on the issue supports the conclusion Michael Salman's 2010 conviction does not extend to bar Suzanne Salman's § 1983 claims. *See Cunningham v. Gates*, 312 F.3d 1148, 1155 (9th Cir. 2002) (finding that one convicted criminal's claims were barred by *Heck* while declining to subject his dead co-conspirator to the same analysis); *Ioane*, 2015 U.S. Dist. LEXIS 4541, at *5-7; *Rodriguez v. City of Salinas*, 2011 U.S. Dist. LEXIS 3427, at *13-14 (N.D. Cal. Jan. 7, 2011) (casting doubt on the defendants' unsupported argument that "*Heck* bars a Section 1983 action brought by an individual who has not been convicted of any crime simply because his constitutional claims may have some bearing on the validity of a third party's conviction"); *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 616 (6th Cir. 2014) (noting that *Heck* "does not apply to third-party § 1983 claims").

The absence of *Heck* barring Suzanne Salman's claims, however, does not resolve the issue fully. Defendant argues, briefly, that Plaintiffs' claims—to include Suzanne Salman's—are barred by collateral estoppel. (Doc. 102 at 3). "To foreclose relitigation of an issue under collateral estoppel: (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1320 (9th Cir. 1992) (internal citation omitted). The issue, then, is whether Michael Salman's conviction in the City of Phoenix Municipal Court, is sufficiently similar to preclude Suzanne Salman from asserting § 1983 claims now.

The preclusive effect of a spouse's prior criminal conviction is an area of the law that has not been thoroughly developed by federal courts. *See Ioane*, 2015 U.S. Dist. LEXIS 4541, at *7, *9-10 (noting that "[t]he case law on this issue appears to be incredibly sparse" and that it "is an unclear area of law which may benefit from further development from higher courts"). In 2015, the Eastern District of California published a thorough and reasoned analysis of the application of res judicata to an individual's § 1983 claim where her spouse's § 1983 claim was barred by *Heck*. *Id.* at *7-10. The court in

*Ioane* found that while the Ninth Circuit had yet to directly address the issue and persuasive authority was "sparse," case law "point[ed] to a finding of preclusion" when a spouse raising a § 1983 claim was in privity with a spouse whose own § 1983 claim was barred by *Heck*. *Id.* at *7-8. Privity is "a legal conclusion 'designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved.'" *In re Schimmels*, 127 F.3d 875, 884 (9th Cir. 1997) (quoting *Southwest Airlines Co. v. Texas Int'l Airlines, Inc.*, 546 F.2d 84, 94 (5th Cir. 1977)).

The FAC's pleaded facts make it clear that Suzanne Salman has been heavily involved in Plaintiffs' efforts to hold bible studies and religious services at their home weekly. For example, the FAC states that Plaintiffs hosted bible studies in their living room every Thursday night since approximately 2006, (Doc. 101 at 6), and that "[t]he Salman[]s are leaders in the Church they attend" and they "desire to practice their faith [and] want to hold private home groups of about 20 people in their living room as they did in 2007 and other times." (*Id.* at 15). Michael Salman was convicted in Phoenix Municipal Court of violating sixty-seven provisions of the Code. *Salman*, 2011 U.S. Dist. LEXIS 122387, at *3. The conviction was appealed, and affirmed by the Maricopa County Superior Court. *Salman*, 2016 U.S. Dist. LEXIS 9462, at *23 n.8. The facts pleaded in the FAC fail to distinguish between the sections of the Code that Michael Salman was convicted of violating, and those which underlie Plaintiffs' § 1983 claims. Under these circumstances, the Court finds that Suzanne Salman stands in privity with Michael Salman, and the "critical and necessary" Code violations actually litigated in Michael Salman's criminal trial are identical to those at issue in this litigation. *Clark*, 966 F.2d at 1320. It follows that Suzanne Salman is precluded from bringing her § 1983 claims against Defendant by collateral estoppel.

Even assuming that collateral estoppel did not bar Suzanne Salman's § 1983 claims, the Court takes "judicial notice of Maricopa County Superior Court case number LC2011-00583 affirming Suzanne Salman's conviction for three zoning violations."

*Salman v. City of Phoenix*, 591 Fed. Appx. 537, at *539 n.2 (9th Cir. 2015). Suzanne Salman was convicted of violating provisions of the Code, and seeks now to assert that application of the Code to her is a violation of her constitutional rights. Given her failure to discriminate between the Code provisions that she was convicted of violating and those that serve as the basis of her § 1983 claims, the Court finds that if Suzanne Salman were to prevail, it would require that the Court "make a finding that would necessarily imply the invalidity of [her] conviction." *Heck*, 512 U.S. at 486-87. Thus, Suzanne Salman's § 1983 claims "are untimely because they have not yet accrued under *Heck*." *Salman*, 2011 U.S. Dist. LEXIS 122387, at *11.

Permitting Plaintiffs to amend the Complaint by adding § 1983 claims in Count I, II, III, V, and VI would be futile.[10]

**B.   Count IV: RLUIPA**

The Court now turns to Plaintiffs' proposed amendments to the RLUIPA claim in the Third Amended Complaint. The factual allegations contained within Count IV are also a series of legal conclusions that the Court need not consider, *Papasan*, 478 U.S. at 286, and the Court must look to the rest of the FAC to determine whether it pleads a plausible claim under RLUIPA. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

With respect to the RLUIPA claim, the FAC has altered little from the Third Amended Complaint. The FAC still includes "details . . . regarding the conflict that gave rise to this litigation," *Salman*, 2016 U.S. Dist. LEXIS 9462, at *19, but ultimately only

---

[10] Even assuming that *Heck* and collateral estoppel did not bar Plaintiffs' § 1983 claims, the Court finds, having liberally reviewed the FAC, that Plaintiffs have failed to state a plausible claim that Defendant's actions violated their First, Fourth, Fifth, and Fourteenth Amendment rights. The Court finds that the factual allegations contained in the FAC do not contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs' factual allegations are "merely consistent" with Defendant's allegedly having violated their constitutional rights, which "stops short of the line between possibility and plausibility of entitlement to relief. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Therefore, the FAC fails to meet the pleading standard set forth in Fed. R. Civ. P. 8(a) with respect to Plaintiffs § 1983 claims.

cites three provisions of the Code: §§ 303.1,[11] 303.4,[12] and 111.1[13] As the Court explained previously, "RLUIPA applies solely to 'land use regulations.'" *Id.* (quoting *Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 994 (9th Cir. 2006)). The statute defines "land use regulation" as "a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land." 42 U.S.C. § 2000cc-5(5).

The Court has considered the FAC, and finds that it continues to suffer from the same deficiencies as previous iterations of the Complaint, and that permitting the proposed amendments in the form of Count IV would be futile. Section 111.1 is simply a provision mandating that "[n]o building or structure shall be used or occupied . . . until the building official has issued a certificate of occupancy." This provision does "nothing

---

[11] Section 303.1, titled "Assembly Group A," establishes that "Assembly Group A occupancy includes, among others, the use of a building or structure, or a portion thereof, for the gathering of persons for purposes such as civic, social, or religious functions; recreation, food or drink consumption or awaiting transportation."

[12] Section 303.4, titled "Assembly Group A-3," simply states that "[a]ssembly uses intended for worship, recreation or amusement and other assembly uses not classified elsewhere in Group A." Section 303.4 then provides a list of structures that fall under this subgroup. Contained within this list is the entry "[p]laces of religious worship." Section 303.4 does not contain any substantive information beyond a list of structures.

[13] The FAC cites to § 110 of the Code, titled "use and occupancy." (Doc. 101 at 3). The current iteration of the Code lists "use and occupancy" as § 111.1. Plaintiffs may be referencing the older version of the Code that Defendant relied on when it prohibited Plaintiffs from holding religious services at their home prior to 2012. The Court acknowledges that Plaintiffs' claims must be analyzed under the Code provision that was in effect when Defendant acted. But the language in the current version of the Code, where "use and occupancy" can be found at § 111.1, is identical to the cited Code provision in the FAC. In the current Code, § 111.1 establishes that "[n]o building or structure shall be used or occupied, and no change in the existing occupancy classification of a building or structure or portion thereof shall be made, until the building official has issued a certificate of occupancy therefor as provided herein. Issuance of a certificate of occupancy shall not be construed as an approval of a violation of the provisions of this code or of other ordinances of the jurisdiction." Given the identical text of the provisions, the Court will refer to § 111.1, the current iteration, throughout the Order.

to suggest that it is a 'zoning or landmarking law' that imposes substantive duties." *Salman*, 2016 U.S. Dist. LEXIS 9462, at *20. It simply requires that a Certificate of Occupancy be obtained as a "prerequisite for use or occupation, or a change in classification for some group of structures." *Id.* Section 111.1 seems to "impose certain requirements before certain gatherings may take place (akin to a building or fire code)," and "nothing indicates that § 11[1].1 is a 'land use regulation' governed by RLUIPA." *Id.* Sections 303.1 and 303.4, similarly, are "definitional section[s]" that categorize and label various types of building occupancy and use. Simply citing to these two provisions makes it impossible for the Court to determine whether the sections of the Code complained of constitute land use regulations.

Even if the Court were to expand its analysis and consider surrounding sections of the Code, the Court arrives at the same conclusion. Section 302.1, titled "general" under the "classification" heading, establishes that "[s]tructures or portions of structures shall be classified with respect to occupancy in one or more of the groups listed in this section." Section 301.1 of the Code merely states that "[t]he provisions of this chapter shall control the classification of all buildings and structures as to use and occupancy." Even considering these additional Code provisions, the Court finds that the FAC fails to state a plausible claim that Defendant imposed "a substantial burden" on Plaintiffs "in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved." *Guru Nanak Sikh Soc'y*, 456 F.3d at 986 (quoting 42 U.S.C. § 2000cc(a)(2)(C)).

For these reasons, the Court finds that the FAC's proposed amendments to Plaintiffs' RLUIPA claim are futile.

**C.     Plaintiffs' Constitutional Challenge to the Phoenix Building Construction Code**

Plaintiffs' Third Amended Complaint contained a clear facial challenge to the constitutionality of the Code. *See Salman*, 2016 U.S. Dist. LEXIS 9462, at *21 (discussing Plaintiffs' claims that the Code was unconstitutionally vague and overbroad because "a person of normal intelligence" could not determine "what is permitted and what is not"). The FAC contains similar language. For example, the FAC asserts that Defendant's "codes and interpretation of the codes do not allow a person of normal intelligence to know what is permitted and what is not," and Defendant's "codes and application of the codes are unconstitutionally broad and vague." (Doc. 101 at 22). Additionally, Count I pleads that the Code is not "facially neutral." Count IV pleads that provisions of the Code are "unconstitutionally overbroad restriction[s]" and "suffer from vagueness," (*id.* at 29), and Count VI pleads that "[t]he standards upon which the Defendant[']s actions were based were impermissibly vague . . . ." (*Id.* at 32). The Court finds that this language is sufficient to mount a challenge to the Code's constitutionality on vagueness and overbreadth grounds.

Having reviewed Plaintiffs' FAC liberally, the Court finds that it would be futile to permit Plaintiffs to add a facial constitutional challenge to the Code. *See Franklin v. Murphy*, 745 F.2d 1221, 1236 (9th Cir. 1984) (citation omitted) (noting that courts must "liberally construe" the pleadings of pro se litigants). Plaintiffs have failed to point to, with reasonable specificity, the Code provisions they believe to be unconstitutional. As discussed in the Court's analysis of Plaintiffs' RLUIPA claim, the FAC only refers to §§ 303.1, 303.4, and 111.1. The FAC "offers nothing to indicate how these specific Code provisions—or which other provisions Plaintiffs mean to assert—are constitutionally infirm." *Salman*, 2016 U.S. Dist. LEXIS 9462, at *21. Plaintiffs' allegations are conclusory, and fail to meet the facial plausibility standard required under Federal Rule of Civil Procedure 8(a). *Ashcroft*, 556 U.S. at 678. The proposed amendment is futile.

### D. Plaintiffs' State Law Claims

Having found that granting leave to file the FAC would be futile with respect to all

federal claims, the Court turns to Plaintiffs' state law claims. Counts I, II, III, V, and VI of the FAC allege violations of the Arizona constitution. Once the Court has dismissed all claims over which it has original jurisdiction, the Court may decline to exercise supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(c)(3). *See Trustees of Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 926 (9th Cir. 2003) (noting that the Ninth Circuit has "held it appropriate for the district court to decline jurisdiction over the pendent state claims because there was no viable federal claim"). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Despite the age of these proceedings, this litigation is in fact in its very early stages. Plaintiffs have yet to file a viable Complaint under Rule 8(a), and no discovery has taken place. The balance of factors tilts strongly in favor of declining to exercise supplemental jurisdiction, as state claims are "best resolved by state courts." *Salman*, 2011 U.S. Dist. LEXIS 122387, at *13. Accordingly, the Court finds that the proposed amendments alleging violations of the Arizona constitution are futile, as the Court would decline to exercise supplemental jurisdiction over the claims.

## IV.   Future Leave to Amend

In the Court's January 27, 2016, Order, Plaintiffs were notified that if they "fail[ed] to state a claim in a proposed fifth version of the Complaint, the Court w[ould] deem that to be Plaintiffs' inability to state a claim and w[ould] not permit further opportunities to amend." *Salman*, 2016 U.S. Dist. LEXIS 9462, at *25-26. The FAC fails to cure the deficiencies in prior versions of the Complaint, and fails to meet Rule 8's pleading standard. Plaintiffs, having failed to state a cognizable claim in the FAC, have

demonstrated a "repeated failure to cure deficiencies by amendments previously allowed. *Schmidt*, 591 Fed. Appx. at 643 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Plaintiffs' motion to file the FAC will be denied without leave to file a proposed amended Complaint.

V. Conclusion

For the aforementioned reasons,

**IT IS ORDERED** that Plaintiffs' Motion for Leave to File Fourth Amended Complaint, (Doc. 100), is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment in favor of Defendant and dismiss this case with prejudice.

Dated this 6th day of June, 2016.

James A. Teilborg
Senior United States District Judge